IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC.<br><br>       Plaintiffs,<br><br>  v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD,<br><br>       Defendant. | Case No. 1:12-CV-560-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for preliminary injunction filed by plaintiff St. Al's.[1] The Court heard oral argument on December 14, 2012, and the motion is now at issue. For the reasons described below, the Court will deny the motion.

## FACTUAL BACKGROUND

Plaintiff St. Al's seeks to enjoin defendant St. Luke's from acquiring Saltzer Medical Group. The acquisition, St. Al's argues, would give St. Luke's such a dominant market share in Nampa that it could raise prices and block referrals to St. Al's in that market.

---

[1] For ease of reference, the Court will refer to the plaintiffs collectively as "St. Al's."

**Memorandum Decision & Order - 1**

St. Al's runs four hospitals; its flagship hospital is in Boise and its second-largest facility is in Nampa.[2] Defendant St. Luke's operates hospitals in Boise, Meridian, and Twin Falls, among other locations. Saltzer is an independent physician group based in Nampa. It consists of about 40 physicians, including 16 physicians who provide adult primary care services and 8 physicians who provide pediatric services out of the Saltzer Main Clinic in Nampa.

By the terms of the proposed acquisition, St. Luke's agrees to acquire all of Saltzer's furniture, fixtures, and equipment, and the two entities will execute a Professional Services Agreement ("PSA"). Under the PSA, Saltzer's physicians will provide medical services on behalf of St. Luke's, mostly in clinics operated by St. Luke's, and in return, St. Luke's agrees to compensate Saltzer and its physicians for performing those medical services. St Luke's will conduct all managed-care contracting and billing for the Saltzer physicians and staff. On January 1, 2013, all Saltzer non-physician employees who accept St. Luke's offer of employment will become employees of St. Luke's.

In the Nampa market, Saltzer accounts for 43% of the adult primary care physicians and about 90% of the pediatric physicians. *See Haas-Wilson Declaration (Dkt. No. 22-23)* at ¶ 18a. St Luke's accounts for about 24% of the primary care physicians in Nampa. *Id*. Thus, if St. Luke's acquired Saltzer, the combined entity would

---

[2] Plaintiff Treasure Valley Hospital Limited Partnership ("TVH") is a physician-owned, for-profit, non-emergency hospital in Boise.

**Memorandum Decision & Order - 2**

have about 67% of the adult primary care physicians in Nampa.  St Al's argues that this market power would allow St. Luke's to negotiate higher fees with health insurers, leading to higher health insurance premiums.  *Id.*

St Al's also alleges that it would suffer harm in the form of lower referrals.  For example, Saltzer's adult primary care physicians accounted for 43% of the total adult primary care admissions at St Al's Nampa hospital.  *Id*. at n. 13.  And Saltzer's pediatricians accounted for 100% of the pediatric admissions at that same hospital from 2004 to 2012.  *Id*. at ¶ 132.  St Al's argues that if the merger occurs, St. Luke's will put pressure on Saltzer's physicians to steer patients away from St. Al's to St. Luke's for procedures such as CT Scans and MRIs, among other things.  St. Al's predicts a large drop in referrals that would force it to lay off over 150 employees.

St. Al's points to St. Luke's purchase of over 20 physician practices in recent years as evidence of St. Luke's attempt to corner the market.  *See Reinhardt Declaration (Dkt. No. 22-20)* at ¶ 2.  St Luke's responds by pointing out that St. Al's is "part of the Trinity Health-Catholic Health Care System, the second largest non-profit health system in the country."  *See Savage Declaration (Dkt. No. 34-5)* at ¶ 2.

Both the Federal Trade Commission (FTC) and the Idaho Attorney General are investigating the proposed acquisition.  The Idaho Attorney General has asked St. Luke's to delay closing the deal to allow the office time to complete its investigation.  *See Exhibit D (Dkt. No. 22-5).*  The FTC is accelerating its investigation in order to finish it before the closing.  *See Exhibit B (Dkt. No. 22-3)* at 6.  Meanwhile, it appears that St.

**Memorandum Decision & Order - 3**

Luke's is proceeding with the closing before the end of the year. *See Exhibit F (Dkt. No. 22-7)* at 2.   St. Al's filed this action against St. Luke's to enjoin its acquisition of Saltzer. The request for injunctive relief is based on Section 7 of the Clayton Act and Section 1 of the Sherman Act. To halt the deal before it closes, St. Al's filed a motion for preliminary injunction.

At a case management conference, the Court set the trial in this matter for July 29, 2013, and put the discovery process on a fast track. The analysis set forth below assumes that this case will be resolved expeditiously on this schedule.

## ANALYSIS

### Legal Standards

Section 7 of the Clayton Act states: "No person . . . shall acquire, directly or indirectly, the whole or any part of the stock or other share capital . . . of another person . . . where . . . the effect of such acquisition may be substantially to lessen competition . . . ." 18 U.S.C. § 18. Section 1 of the Sherman Act states: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. Both Acts are designed to prevent harm to consumers. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1446 (9th Cir. 1995).

Section 16 of the Clayton Act empowers any person threatened with injury by a violation of the Sherman or Clayton Acts to seek injunctive relief in the federal courts. *See* 15 U.S.C. § 26. Such actions are expressly subject to the "same conditions and

Memorandum Decision & Order - 4

principles" applied to injunctions "by courts of equity," thus triggering traditional equitable prerequisites for injunctive relief. *Id.*

Equity treats the preliminary injunction as an "extraordinary remedy." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). St. Al's must show that "irreparable injury is likely in the absence of an injunction." *Id*. at 22. An injury is not irreparable when it can be remedied by money damages or some form of relief other than an injunction. *See* 11A Wright and Miller *Federal Practice & Procedure* § 2948.1. The irreparable harm must occur "before a decision on the merits can be rendered." *Id.* In this case, that means that the irreparable harm must occur prior to the trial now set for July 29, 2013, about 7 months from now.

St. Al's argues that irreparable injury will occur because the combined entity will have increased leverage with health insurers that will result in higher premiums for consumers. However, St. Luke's has already entered into a Memorandum of Understanding with the largest Idaho insurer, Blue Cross of Idaho, setting forth their agreement to enter into a contract on January 1, 2013, for a term of two years. *See Taylor Declaration (Dkt. No. 34-15)* at ¶ 3. Even assuming the acquisition would give St. Luke's leverage at some point, it would come too late to be exercised with regard to Idaho's largest insurer, at least until 2015. By that time, this case should have been long-since resolved on the merits.

St Al's argues, however, that prices will go up simply because St Luke's charges higher prices for comparable services than Saltzer. As an example, St. Al's submits the

**Memorandum Decision & Order - 5**

Declaration of a Twin Falls physician, Dr. Peter Doble.  *See Doble Declaration (Dkt. No. 22-22).*  Dr. Doble asserts that St. Luke's "owns all the hospitals in the Magic Valley [Twin Falls area]," and can therefore charge supra-competitive prices for CT Scans and MRIs, among other services.  *Id.* at *(Dkt. No. 22-22)* at ¶ 2-4.  As a result, he sends his patients long distances away to save hundreds of dollars on CT Scans and thousands of dollars on MRIs.  *Id.* at ¶ 4.

It is not likely that this scenario can be repeated in Nampa where St Al's has one of its main hospitals, providing a full range of imaging procedures.  If St. Luke's raises prices to supra-competitive levels after the merger, patients will likely get their CT Scans and other imaging procedures at St. Al's Nampa hospital.  After all, Dr. Doble's patients traveled a long way to save costs – it seems likely that Nampa patients would be willing to switch to a low cost provider in their own city.

St. Al's argues that it will be forced to lay off 150 employees or more if the merger goes through, and that the loss of the jobs would be an irreparable injury.  The job losses will be triggered, St. Al's argues, by an immediate loss of referrals.  It also contends, that in past cases where St. Luke's has taken over physician practices, the loss of referrals was immediate.

Whatever terms governed those takeovers, the terms of the merger here provide that the Saltzer's physicians will retain the right to make referral decisions based on the best interests of the patients.  *See Savage Declaration (Dkt. No. 34-5)* at ¶ 20; *Kaiser Declaration (Dkt. No. 34-17)* at ¶ 3-4, 13.  St. Luke's counsel represented that their client

**Memorandum Decision & Order - 6**

will not be prompting Saltzer's physicians to steer patients to St. Luke's. Given these circumstances, the Court cannot find it likely that St. Al's prediction of an immediate referral drop will actually occur by the time the Court can hold a trial in this case. Thus, while St. Al's could lay off employees for many reasons, any layoffs prior to trial (on July 29, 2013) are unlikely to be caused by the steering of patients to St. Luke's as a result of the merger. If the representations of St. Luke's counsel prove not to be true, and St. Al's experiences a measurable reduction in referrals, it can bring that fact to the Court's attention at trial. And, if referrals are reduced, St. Al's may seek a preliminary injunction to bar any further steps towards integration of Saltzer into St. Luke's until after a final decision has been issued.

There are two other important factors in the Court's finding that St Al's has not carried its burden of showing that it is likely to suffer irreparable harm before the Court can hold a trial in this case. First, the integration of Saltzer into St. Luke's "will take place gradually over time." *See Kee Declaration (Dkt. No. 34-18)* at ¶ 73. St. Luke's has no plans to close any of Saltzer's clinics or facilities, to dispose or discontinue the use of any major equipment, or to alter Saltzer s present service offerings. *Id.* at ¶ 62. Saltzer's organizational structure – its directors, administrators, chief nursing officer and other such positions – will remain unchanged for at least a year. *Id.* at ¶ 63. Moreover, tasks such as converting Saltzer s phone and email systems and integrating its coding, billing, accounts receivable, and medical records systems will not occur for over a year. *Id.*

Secondly, if the transaction must be unwound, "the PSA provides a process . . .

**Memorandum Decision & Order - 7**

that gives Saltzer the right to repurchase tangible assets purchased by St. Luke's and ensures that Saltzer has access to the personnel, facilities, medical records, and other resources that it would need to provide uninterrupted care to patients." *Id.* at ¶ 18.  And if unwound, the deal allows Saltzer to return to operation as an independent physician group. *Id.*

Given that trial can be held by July 29, 2013, the gradual integration and the built-in unwinding process mean that the Court will have no difficulty in ordering an immediate and complete divestiture if that is the result compelled at trial.

## Conclusion

For all of these reasons, the Court finds that irreparable harm is not likely following the merger and prior to a decision on the merits this summer.  Accordingly, St. Al's motion for preliminary injunction will be denied.

The Court's decision is based on four critical assumptions: (1) This case will proceed on a fast track to trial; (2) Prior to trial, there will be no measurable reduction in referrals to St Al's from Saltzer physicians;  (3) The integration of St. Luke's and Saltzer will proceed gradually; and (4) The acquisition can be unwound and divestiture ordered if St Al's prevails on its antitrust claims.  If these assumptions prove unfounded prior to trial, St. Al's is free to seek a preliminary injunction to freeze the integration process and/or unwind whatever steps have been taken to integrate Saltzer into the St. Luke's system.

## ORDER

**Memorandum Decision & Order - 8**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for preliminary injunction (docket no. 22) is DENIED.



DATED:  **December 20, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge