UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

SOUTHERN DIVISION


St. Alphonsus Medical Center -)      Case No. CV12-560-BLW
Nampa, Inc., et al,          )
                             )
      Plaintiffs,            )
                             )      Boise, Idaho
      vs.                    )      April 23, 2013
                             )      9:36 a.m.
St. Luke's Health System,    )
LTD, et al,                  )
                             )
      Defendants.            )
                             )
. . . . . . . . . . . . . . )




VOLUME I OF I
TELEPHONIC HEARING
BEFORE THE HONORABLE RONALD E. BUSH
UNITED STATES MAGISTRATE JUDGE




COURT RECORDER:              TRANSCRIPTION BY:

TRINIDAD DIAZ                CANYON TRANSCRIPTION
U.S. District Court          P.O. Box 387
                             Caldwell, Idaho  83606
                             (208)454-1010




Proceedings recorded by electronic recording.  Transcript
produced by transcription service.

APPEARANCES:

| For the Plaintiff Federal<br>Trade Commission:<br>(by telephone) | MR. HENRY CHAO-LON SU<br>MR. MICHAEL JAMES PERRY<br>MR. PETER C. HERRICK<br>MR. J. THOMAS GREENE<br>U.S. Federal Trade Commission<br>601 New Jersey Avenue, N.W.<br>Washington, DC  20001 |

| For Plaintiff Treasure<br>Valley Hospital Limited<br>Partnership:<br>(by telephone) | MS. PORTIA L. RAUER<br>Powers Tolman<br>P.O. Box 9756<br>Boise, Idaho 83707 |

| For Plaintiff State of<br>of Idaho:<br>(by telephone) | MS. WENDY K. ARENDS<br>MR. ERIC J. WILSON<br>Godfrey & Kahn, S.C.<br>One East Main Street, Ste. 500<br>Madison, Wisconsin 53701 |

| For the Defendant<br>St. Luke's Health<br>System:<br>(by telephone) | MR. JACK R. BIERIG<br>MS. TACY F. FLINT<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, Illinois  60603<br><br>MR. J. WALTER SINCLAIR<br>Stoel Rives, LLP<br>101 South Capitol Blvd., Ste 1900<br>Boise, Idaho 83702 |

| The Defendant Saltzer<br>Medical Group:<br>(by telephone) | MR. BRIAN K. JULIAN<br>Anderson, Julian & Hull<br>P.O. Box 7426<br>Boise, Idaho 83707 |

```
                         I N D E X

                                        PAGE      LINE

       PLAINTIFF FEDERAL TRADE COMMISSION'S    13        14
           ARGUMENT                            21        12


       DEFENDANTS' ARGUMENT                      7         4
                                               22        17


       RULING                                  25         3
```

 1                    (Proceedings begin.)

 2          CLERK:  Counsel, we have Judge Bush here for the status

 3   conference in Civil Case No. 12-560, St. Al's versus St. Luke's.

 4          COURT:  Counsel, good morning.  I understand that Ms.

 5   Ball has already addressed or Ms. Case has with you who will be

 6   arguing on each side and I have that information in front of me.

 7   Let's begin with having -- Mr. Bierig, would you just identify

 8   yourself for our record and identify those from your side of the

 9   equation who are also on the line, please?

10          MR. BIERIG:  Yes.  Good morning, Your Honor.  This is

11   Jack Bierig, B-i-e-r-i-g, with the law firm of Sidley, Austin in

12   Chicago on behalf of St. Luke's.  With me in my office is Tacy

13   Flint and also present by phone is Walt Sinclair from the Stoel

14   Rives firm.

15          COURT:  All right.  Thank you.  And is it Henry Su?  Am

16   I pronouncing your last name correctly, sir?

17          MR. SU:  Yes, Your Honor.

18          COURT:  All right.  Would you do the same then, please,

19   for the folks who are on the line on behalf of the government

20   plaintiffs?

21          MR. SU:  Yes, Your Honor.  This is Henry Su, S-u, from

22   the Federal Trade Commission.  With me in my office are Michael

23   Perry and Peter Herrick also with the Commission and also

24   separately on the line for the Commission is Tom Greene,

25   G-r-e-e-n-e.  And then also on the phone representing the State

1     of Idaho are Eric Wilson and Wendy Arends, A-r-e-n-d-s.

2            COURT:  Thank you.  I understand we also have on the

3     line Ms. Rauer with the Powers Tolman firm on behalf of Treasure

4     Valley and Mr. Julian on behalf of Saltzer as well.  Is that

5     right, Ms. Rauer?  Are you there?

6            MS. RAUER:  I am, Your Honor.  Thank you.

7            COURT:  Mr. Julian?

8            MR. JULIAN:  Yes, Your Honor.  Yes, Your Honor.  Thank

9     you.

10           COURT:  Okay.  All right.  Now, counsel, let me preface

11    this argument this morning with a couple of things.  First, just

12    so our record is clear, this particular method of resolving a

13    discovery disagreement was set up by Judge Winmill, the

14    presiding judge in this matter, as part of his original pretrial

15    orders and it calls for a necessarily informal process to some

16    degree.

17           Then I've had an opportunity to review the submissions,

18    some of which came in the form of e-mail, some of which came in

19    the form of briefing.  I'm familiar with the issues in that

20    setting and I think that it's important to note here for the

21    benefit of counsel that because of the unusual nature of the way

22    that this case is going forward on a very fast track basis

23    towards trial, the fact that an expedited discovery process was

24    already underway at the time that the federal government and the

25    state government became parties to the case, the fact that it's

 1    a complicated anti-trust action involving multiple parties and

 2    tens of thousands of pages of document and of course enormous

 3    amounts of electronically stored information as well, the sort

 4    of general rules that might apply both as to the Federal Rules

 5    of Civil Procedure and the local rules of this court are not

 6    necessarily a very adequate template to resolve this present

 7    dispute.

 8            So I say that to simply note that in the Court's view,

 9    at least what I've seen to this point, even though the case is

10    not very old, the discovery has progressed substantially

11    already.  And so the kind of classic rule that contention

12    interrogatories are generally a disfavored tool early on in the

13    case is not necessarily appropriate here.

14            Similarly, however, the very nature of contention

15    interrogatories means that there's an enormous burden that goes

16    along with trying to respond to them.  So I'm paying attention

17    to those issues as well and in trying to sort through all of

18    this, I've been trying to balance in my mind the needs as

19    opposed to the benefits and I'm also considering the fact that

20    in a setting such as this where it's the government regulatory

21    function that's being met by the FTC and the State that it's not

22    the classic model in terms of who one might turn to to ask

23    questions of in a deposition setting.

24            So I have all of that in my mind in trying to sort

25    through all of this and I simply tell you that at the outset so

1    that, counsel, you have the benefit of that as you make your

2    respective arguments to me here.

3            Mr. Bierig, I'll hear from you first.

4            MR. BIERIG:  Thank you, Your Honor.  Thank you for

5    scheduling this so promptly.  As Your Honor has just noted, this

6    case is on a very tight schedule with discovery set to close

7    provisionally on June 18, less than two months from now.  As

8    Your Honor knows, as we all know, in accordance with the case

9    management order entered by Judge Winmill, we served

10   interrogatories in a timely fashion that were designed to

11   determine the bases for the government plaintiffs' allegations

12   against St. Luke's in this -- in their Complaint.

13           We did not think that setting forth the bases for their

14   substantive allegations should pose undue burdens for the

15   government plaintiffs because after all, they were the ones that

16   made the allegations.  Presumably they had a basis for each one

17   of those allegations and documents and other materials to

18   support those allegations and what we're saying is tell us what

19   those are.

20           It is extremely critical for us to have this

21   information in order to be able to prepare a defense generally

22   in the short time that we have and to do the depositions in the

23   less than two months that remain.

24           And rather than talk about this in the abstract, what I

25   thought I would do is just sort of take two or three of the

1    interrogatories and demonstrate why it's very important for us

2    to have this information, why it should not be all that

3    burdensome for the government which is, as you pointed out, the

4    United States and the State of Idaho who are not typical private

5    litigants.

6           So, for example, Interrogatory 7, "Identify the health

7    plans that have had limited success resisting price increases in

8    the past and believe their ability to do so will further

9    diminish if the acquisition is allowed to stand."  That's a

10   hugely important issue in this case because the theory of the

11   government is that by virtue of this affiliation between Saltzer

12   and St. Luke's, prices are going to increase through the

13   exercise of market power.

14          If we're going to take discovery and prepare our

15   defense, we need to know exactly which health plans the

16   government is alleging that have had limited success resisting

17   price increases and we want to know who the people are who

18   believe that their ability to do so will further diminish if

19   what they refer to as the acquisition is allowed to stand.

20          There's one way to get that information and it's pretty

21   easy.  It's to ask the government who are these health plans,

22   what's the basis for that allegation and, you know, who should

23   we be talking to.  Then we can schedule depositions of those

24   people and determine whether what the government has alleged has

25   any basis.

1          Or you move to No. 12.  I'm just taking these as --
2   pretty much at random.  "Describe in detail the factual basis
3   for the allegation that in the Magic Valley, St. Luke's used its
4   new-found leverage to extract higher payments from health plans
5   that had no choice but to agree to St. Luke's rate demand."  We
6   don't think that's true at all but we know that part of the
7   government's case is to say, look, after certain acquisitions in
8   the Magic Valley, prices rose and therefore we expect the same
9   result to occur in the Treasure Valley as a result of the
10  affiliation with Saltzer.
11          So if we're going to prepare our case properly and take
12  depositions of the right people and ask the right questions to
13  those people, we want to know exactly what the basis is for the
14  government's allegations that we used leverage, that we used
15  market power to extract higher payments from health plans.  We
16  want to know who those health plans are, what the basis is for
17  their claim that we used market power to extract higher payments
18  from them and we want to know why they say that whoever these
19  health plans are have, quote, no choice but to agree to
20  St. Luke's rate demands.
21          We need to know that because we need to be able to show
22  that that in fact didn't occur and that that is not a prediction
23  of what's going to happen as a result of the Saltzer information
24  -- as to the Saltzer affiliation.
25          No. 16, they claim that there are all these

1    improvements that St. Alphonsus has achieved by working with

2    independent physicians and it is going to be the government's

3    theory and St. Alphonsus' theory that those same improvements

4    could have been achieved by St. Luke's without the tight

5    integration that is a part of the Saltzer affiliation.  It's

6    going to be our defense that the tightness of this integration

7    is necessary to achieve the efficiencies and the benefits that

8    we see resulting from this affiliation.

9            So therefore, it's critical to the defense of our case

10   to know precisely what improvements they claim St. Alphonsus

11   achieved that they say we could not have -- that we could have

12   achieved fore to the affiliation with Saltzer.

13           These are just three examples to see that they should

14   not be particularly burdensome on the government.  The

15   government actually made the allegations and we want to know

16   exactly what the basis is for these things.

17           This is true if we had time -- I know Your Honor

18   doesn't want to spend time.  I would be happy to do so if you

19   want.  We could go through every one of the sub parts of the

20   contention interrogatories in Paragraph 1 or we could go through

21   any of the 17 other interrogatories that we've served and I

22   could explain to Your Honor for each one of those why we need to

23   understand the basis for the claim or the allegation and why by

24   far the most efficient and effective way to proceed is to

25   basically ask the government.

1          As Your Honor correctly noted in your preparatory
2    remarks, this is not the kind of thing where we can sit down and
3    have a 30(b)(6) deposition and say what is the meaning of all
4    this because this is a Complaint that was written by a number of
5    government officials in their capacity as sort of prosecutor and
6    we can't lay a 30(b)(6) dep on the chair of the FTC or on Mr.
7    Wasden and say what was meant by these allegations.
8          So by far, the most efficient way is to ask them for
9    each one of these substantive allegations what exactly is the
10   basis for their allegation, what did you mean by it and what do
11   you have to support it.  And that's exactly what we've done.
12         Their response is two-fold.  One is I think they make
13   really a response which is very unsatisfactory.  They make this
14   highly technical argument that we've exceeded 25 depositions and
15   we should have sought leave from the Court.  As Your Honor I
16   think suggested implicitly in the Court's opening remarks, all
17   that would do is delay the very tight schedule we're on.  In
18   effect, the government has now forced us to seek leave of court.
19   That's what we're doing so I don't see that we should be
20   bickering about this.
21         This is not a case where we want to be delaying on
22   technicalities these kinds of things.  So let's get to the
23   substance.  The only substantive -- the thing -- two substantive
24   things.  They say, well, you can get this in depositions of
25   other parties but the fact is we can't.

1          When we decide who we want to depose, we have to know

2     exactly who these health plans are that they're claiming, what

3     are the facts in the Magic Valley, what these improvements are

4     that they claim St. Alphonsus has achieved that we could have

5     achieved.  We need to know that before the depositions and the

6     only way to get that is by asking the government.

7          And then their other argument is that this is somehow

8     burdensome on the government but it really isn't that

9     burdensome.  Sure it will take them time to do it but they

10    made -- they were the ones who chose what allegations they made.

11    They decided how they're going to phrase these allegations and

12    it shouldn't be a burden on them to basically tell us all the

13    things that they're relying on for these very serious

14    allegations that we need to defend ourselves against.

15         So we think that balancing the need for us to prepare

16    our case and to do the depositions against the burden, we think

17    the balance points sharply towards forging each and every one of

18    these interrogatories.

19         Now, under Judge Winmill's order, you know, that Judge

20    Winmill put in the case management order, we were supposed to

21    have responses to this tomorrow, April 24, is when we were

22    expecting to get responses.  Clearly that's not going to happen

23    because of the interjections they've interposed but we don't

24    think it's inappropriate to ask that within five days after Your

25    Honor issues a ruling, assuming Your Honor does enforce these

1    interrogatories, that they be required to give us full and

2    complete responses to each and every one of these

3    interrogatories.  We need that in order to go forward with the

4    depositions and with further written discovery that we may put

5    on some of these as yet unidentified health insurers, some of

6    these people in the Magic Valley they're talking about and

7    various other things that are brought forth that we hope to

8    learn in the interrogatories.

9         We got two months to do it which is a very, very slight

10   amount and we need to have these answered and we need to have

11   them basically as soon as possible.  So that is in essence my

12   position, Your Honor.

13        COURT:  All right.  Thank you, Mr. Bierig.  Mr. Su.

14        MR. SU:  Yes, Your Honor.  You know, I think based on

15   Your Honor's comments, we're on the same page.  The government

16   plaintiffs joined this case understanding that we would be

17   joining a case that -- you know, for which fact discovery was

18   already at least a couple months or so underway and that we

19   would be working under an accelerated schedule.  It's for that

20   reason that my colleague Tom Greene wrote a letter to Mr. Bierig

21   on March 14, two days after we had filed our Complaint enclosing

22   our initial disclosures.

23        Those initial disclosures include the identification of

24   all of the health plans we've talked to and there are probably

25   four or five of them, that's it, that -- you know, that would be

1    the basis of the allegations that Mr. Bierig has talked about.

2            Also, Mr. Bierig talked about St. Alphonsus' quality

3    improvements which are the subject of one of our allegations in

4    the Complaint.  Well, St. Alphonsus was the original plaintiff

5    in this case and St. Luke's has been taking discovery of

6    St. Alphonsus as well.

7            So it is not the case that -- you know, that we haven't

8    moved this case along, that we haven't given St. Luke's what it

9    needs to get ready for depositions.  In addition to the initial

10   disclosures, we've produced, you know, pretty much everything

11   from our files that we've collected from third parties.  And

12   what we're worried about today, Your Honor, are basically the

13   types of discovery requests that create undue burden and really

14   don't add all that much to the discovery process and that -- you

15   know, I respectfully disagree with Mr. Bierig that these

16   interrogatories that they've served are not -- don't impose an

17   undue burden on us.

18           Although Mr. Bierig gives -- went through the examples

19   of 7, 12 and 16 which relate to the health plans that are at

20   issue in this case and to St. Al's quality improvements, he

21   failed to talk about Interrogatory No. 1 which is really, you

22   know, the major focus of our concern here.

23           It alone lists 29 sub parts and through the meet and

24   confer process, we formed an understanding that what St. Luke's

25   is looking for here is for us to catalog every piece of evidence

1    where there is a document or testimony or data, whatever, that

2    might support each and every one of the allegations that they've

3    listed there.  And that, according to the case law we've cited,

4    Your Honor, the IBP case from Kansas, the --

5         COURT:  Mr. Su, let me -- Mr. Su, let me interrupt you

6    at that point.  I've got a disconnect in my mind here.  I

7    presume that your office as well as the Idaho Attorney General's

8    Office made some determination based upon the investigation that

9    you've conducted and the documents you've assembled and the

10   interviews that you've conducted that there was some basis in

11   fact and law to bring the Complaint that you brought.  I mean

12   that's sort of self-obvious, right?

13        MR. SU:  Correct, Your Honor.

14        COURT:  So what I'm searching for here is the space

15   between that point and then describing that in a fashion that

16   doesn't call on you to have to disclose your work product or

17   other privileged or protected communications and also isn't just

18   a sort of right back at you St. Luke's response which is to say

19   everything which I think Mr. Bierig is at some risk of given the

20   nature of the discovery that's been propounded.

21        So I'm really not interested in whether or not you're

22   both playing fair in terms of trying to sort through these

23   issues.  I'm satisfied that you know that your responsibilities

24   require that and everybody's trying to do that.  But it doesn't

25   seem to me that it's unreasonable at this point in the case to

1   say to you, all right.  You've gone to all this effort.  You've

2   put all this together.  You've framed your Complaint.  We're on

3   a short time frame here.  There's not going to be a year and a

4   half of discovery going forward.  It's appropriate at some point

5   or at some level to say, all right.  Be more specific about who

6   and what.

7        Now, are you telling me you just don't think that

8   there's any space at all for you to have to do that and if

9   that's the case, then I'll incorporate that into my thinking.

10  But are you telling me that you think there is some space to do

11  that?

12        MR. SU:  Yes, Your Honor.  We're telling the Court that

13  there is space.  What -- the burden that I'm talking about, Your

14  Honor, relates to our understanding that they're asking for

15  every single shred of evidence that might support each of these

16  allegations.  Certainly consistent with the case law, we are

17  prepared to identify the main or principal pieces of evidence

18  that, you know, are relevant to, you know, the allegations.  For

19  instance, if it's an allegation that refers to what somebody

20  said, we're perfectly willing and able to identify the

21  testimony, the investigational hearing testimony that that came

22  from or the declaration that that came from.

23        So it's not that -- you know, that we're not prepared

24  to provide some sort of a response but, you know, I think the

25  kind of response that St. Luke's is demanding here would be an

1    undue burden in amounts that just -- a make-work exercise when

2    the parties have other things that they need to be doing to

3    get -- you know, to get through fact discovery.

4         COURT:  And you're prepared to do that as to each and

5    every one of the sub parts of Interrogatory 1 which in essence

6    are tied to the allegations of your Complaint?

7         MR. SU:  Yes, we are prepared to do that.

8         COURT:  Okay.  All right.  Now I interrupted you and

9    I'm sure I kind of interrupted your train of thought but I

10   wanted to make sure you have a chance to make your other points

11   as well.  Go ahead, please.

12        MR. SU:  I know, Your Honor.  I mean I think the point

13   again is if we take Interrogatory No. 1 as the focus of our

14   concern, I think it is that delta between, you know, produce

15   everything or identify everything that you think might possibly

16   support your allegations a lot of which I must say come from,

17   you know, St. Luke's own production versus a reasonable response

18   to, you know, the sub parts identifying the main or principal

19   pieces of evidence that we were thinking about when we made the

20   allegations.

21        COURT:  Okay.  And how would you define the main or

22   principal pieces of evidence?

23        MR. SU:  Well, Your Honor, I mean I think in most

24   instances, I would say that they are there -- well, as Mr.

25   Bierig's own interrogatory puts it in the preamble, he talks --

1    it requests us to respond to documents that are specifically

2    referenced in the Complaint.  Well, obviously if an allegation

3    specifically references a document or testimony, you know, or

4    something of that nature, we're prepared to identify what that

5    is.

6         COURT:  Well, that strikes me as being a whole --

7    removed from the main or principal evidence.

8         MR. SU:  Well, and I would say, Your Honor, we can give

9    examples of the type of evidence that we would be looking for

10   for other allegations.  But again, to try to catalog every type

11   of evidence that might support an allegation, we don't think --

12   you know, is it a productive exercise, particularly when we too

13   are also taking fact discovery and developing our case and there

14   are other ways that, you know, St. Luke's will learn of the

15   documents or evidence that support our case, for instance,

16   through the disclosure of trial exhibit lists and our expert

17   reports which are to come.

18        COURT:  Well, but that's quite a ways downstream I mean

19   relatively speaking given the sequence of events.

20        MR. SU:  Your Honor -- I'm sorry.

21        COURT:  Given the sequence of discovery.  I guess my

22   point, Mr. Su, is I thought maybe you were telling me something

23   that would make good sense but now you seem to be putting a

24   rather tighter loop around it and I'm not so sure.  What I'm

25   getting at is what is it that you're willing to do that won't

1  require St. Luke's to guess at what your supporting evidence

2  would be so that they can make decisions about how to best

3  explore that more fully in deposition setting without making it

4  such that I'm going to have a further argument -- a further

5  hearing between all of you about some kind of generic, well,

6  anything and everything that we've given you might support that

7  allegation?  What's the space in between?  Is there more that

8  you can provide?  Because it seems to me you were just telling

9  me, well, we'll point to the specific items that we referred to

10  in the Complaint.  Well, that's not enough.

11          MR. SU:  Well, for those, I mean for the allegations

12  that specifically refer to testimony, we would point to that.

13  For other allegations, again, the case law talks about giving,

14  you know, an example of what the principal evidence would be or

15  the main evidence would be and that we're prepared to do that as

16  well.

17          Plus, Your Honor, I would mention that the parties have

18  agreed by tomorrow to exchange provisional witness lists which

19  will include descriptions of what -- the witnesses who are

20  likely to testify at trial and the areas of their testimony and

21  that will also provide St. Luke's with disclosure regarding who

22  said what or, you know, in support of our contentions.

23          COURT:  Well, let me just take an example from what's

24  in front of me here.  Paragraph 50 of your Complaint alleges

25  that the typical increase in income provided to an acquired

1   physician group is 20 percent.  St. Luke's says, all right.

2   Identify the quantitative evidence in the form of testimony,

3   witness statements, documents and other evidence that would

4   relate to that paragraph.  Assuming that -- and it would be

5   appropriate for you to assume here that I'm not going to make a

6   decision based upon some number of interrogatories that's

7   greater than what would otherwise be allowed.  Assuming that you

8   are required to answer that, what would be your understanding

9   about how you would answer that today based upon our discussion

10  here this morning?

11          MR. SU:  Well, so, Your Honor, taking Paragraph 50 as

12  an example, we would point to the study provided -- produced to

13  us by St. Luke's of its third party consultant where they

14  analyzed the compensation scheme and concluded that it was a

15  certain percentage above typical market norms.

16          COURT:  And that's all -- that's all kind of stuff --

17  that's all kind of stuff I assume that you've done as a basis

18  for preparing the Complaint.

19          MR. SU:  Yes, Your Honor.

20          COURT:  So describe to me where it becomes -- other

21  than it's a task in a complex case that's got a lot of work to

22  do for a lot of lawyers, describe to me where the unfair burden

23  is in sitting down and responding in that fashion to this

24  interrogatory.

25          MR. SU:  Well, the (inaudible), Your Honor, if we are

1   expected to comb through other documents that have been produced

2   to us for other support for this allegation.  I mean that's

3   obviously a work in progress.  We too are preparing for

4   depositions of St. Luke's witnesses and so while -- again, while

5   it's one thing to identify documents that certainly were before

6   us when we drafted the Complaint, it's another thing to go

7   through, you know, St. Luke's production which is hundreds of

8   thousands of pages to try to catalog anything else that might be

9   supportive of Paragraph 50.

10          COURT:  Okay.  All right.  That's fair.  Anything else,

11  Mr. Su?

12          MR. SU:  No, Your Honor.  I understand, you know, the

13  Court's interest in trying to see how this can be done and then

14  balancing the nature of this case, the need for, you know, the

15  parties to proceed on an accelerated schedule with the burdens

16  that, you know, may be attended with responding to these

17  interrogatories.  And we're thinking about it in the same way

18  and really the issue for us is, again, that this task of

19  responding to these interrogatories not turn into a make-work

20  exercise where we're spending additional time looking through

21  St. Luke's production or St. Al's production for every

22  support -- every possible piece of support for our case.

23          COURT:  I assume there's some overlap in all of this in

24  terms of the information.  You may have information that you

25  obtained in your investigation that neither St. Al's or

1   St. Luke's has but now is in the course of being produced or

2   maybe already has been produced but otherwise, much of it -- I

3   shouldn't say much of it.  I assume that some of it is

4   information that would either already be in the hands of

5   St. Luke's because it's information you obtained from St. Luke's

6   are in the hands of St. Al's because it's information you

7   obtained from St. Al's.  Is that an accurate statement?

8         MR. SU:  That's accurate, Your Honor.  I should mention

9   also that while we certainly have collected documents from third

10  parties such as health plans, that St. Luke's and St. Al's have

11  served a number of third party subpoenas as well and so we're

12  actually getting production of third party information that we

13  didn't have before as part of our investigation.  So it's not as

14  if we -- you know, everything we have, you know, the parties

15  didn't have before.

16        COURT:  All right.  Very good.  Mr. Bierig.

17        MR. BIERIG:  Yes.  Let me just respond.  First of all,

18  I want to assure Your Honor that we have made it very clear to

19  the Federal Trade Commission and the State of Idaho that we are

20  not seeking their work product or any privileged information.

21  We've made that 100 percent clear so that shouldn't even be at

22  issue in this case.

23        I think that what Your Honor said is exactly what we've

24  asked for and we've made it clear, by the way, that we've asked

25  for this and I'm a little surprised to be hearing what Mr. Su is

1   saying as if he's learning this for the first time.

2        We've said that you on March 12 when you filed this

3   Complaint, you made very serious allegations against St. Luke's.

4   You said, for example, in Paragraph 1 that there's quantitative

5   evidence, statements and documents from commercial health plans

6   and local employers that the acquisition likely will lead to

7   higher health care costs and lost available non-price

8   competition.  So we said, okay, identify that quantitative

9   evidence.  Identify those statements and documents and tell us

10  what they are so we can follow up on them.

11       Paragraph 4 where they say the evidence -- this is what

12  they said.  The evidence that St. Luke's facilities almost

13  invariably charge substantially higher fees, often more than

14  double those of independent facilities even when the patient is

15  receiving the same services in the same location she did

16  before her PCP, that's primary care physician, was acquired by

17  St. Luke's.  We're saying, okay.  Tell us -- tell us what

18  evidence you had in mind on March 12 when you filed this

19  Complaint that supports it.  And the same thing with every one

20  of these things.

21       As you pointed out, Paragraph 50, the evidence of the

22  typical increase in income provided to an acquired physician

23  group of 20 percent.  All right.  You made that allegation on

24  March 12.  What is the basis for that allegation?

25       We're not asking them to go through and get each and

1    every document that might exist somewhere in the millions of

2    documents that -- you know, that was -- that have been produced

3    in this case.  We want to know what the basis was -- what the

4    evidence was that they were relying upon in making each and

5    every one of these allegations.

6           Certainly, as Your Honor had pointed out, there was

7    such evidence.  We want to know what it is so we can follow up

8    on it and either, you know, try to say it's wrong or they

9    misunderstood or we have an explanation or whatever it is.  And

10   that's all we're asking and, you know, it is going to be

11   somewhat of a task for them but that's, you know, what happens

12   when you make serious allegations in a case that's on a very

13   tight schedule.

14          So that's our point.  I think Your Honor understands

15   exactly what we're asking for and, frankly, I think Mr. Su

16   understands what we're asking for and I think it should be

17   ordered that they produce each and every piece of evidence that

18   they were thinking about to support the allegations in this

19   Complaint that we've asked about.  It's at simple as that.

20          COURT:  All right.  Mr. Su.

21          MR. SU:  Just quickly.  I was on the meet and confer

22   call with Mr. Bierig as was my colleague Peter Herrick and also

23   Wendy Arends and we did not come away with that understanding

24   that we were -- we would be allowed to identify only the main or

25   principal pieces of evidence that we were thinking about when we

1    drafted the Complaint but I will accept Mr. Bierig's

2    representations to the Court today and proceed on that basis.

3             COURT:  All right, folks.  Everybody take a deep

4    breath.  You're all kind of wound up about all of this and I

5    think we can work through it.

6             I'm going to give you an oral ruling today because I'm

7    satisfied I think I know where I want to go with this and it's

8    not going to help me to sit down and try to put it in any kind

9    of writing.

10            In a sense, where all of you are at in this case is, to

11   use an Idaho analogy I guess, you're all in the same river

12   coming down from the mountain and there are streams coming in

13   from either side that are bringing more flow into the stream and

14   you're trying to integrate and absorb all of that and everybody

15   be in the same channel while you're doing that.  So it's

16   unquestionably a moving target as you're going along and it's

17   difficult to manage that.  I think Judge Winmill's put a

18   structure in place that's given you good assistance in that.  I

19   know you're all trying to meet that.

20            But in that regard, as I said at the outset, it makes

21   this issue the nature of these contention interrogatories at

22   this particular stage of the case a little bit different than it

23   might be in some cases.

24            I'm satisfied that contention interrogatories of this

25   nature can appropriately be pursued by St. Luke's at this stage

1   of the litigation but, similarly, I think that it's appropriate

2   that the government -- I'm trying to think how best to fashion

3   this so there's no confusion going down the road.  That the

4   government's response is based upon what it has in its hands

5   right now that it's had a chance to process.

6          So obviously primarily, that's going to be the

7   documents and the information that it's had from the nature of

8   its investigation leading up to the Complaint being filed and to

9   the extent that it's then aware from reviewing anything else

10  that's come into its possession that there's additional

11  information that it would rely upon and that would need to be

12  part of the mix as well.

13         And so within that particular universe of information,

14  I'm going to require that the government plaintiffs respond to

15  all the interrogatories but it will be with the explicit

16  understanding that that is information that may very well be

17  supplemented in terms of the responses based upon additional

18  information that comes into the possession of the government in

19  the course of the case going forward and the review of that

20  information.

21         Now, the acid test for that later on if there's a

22  dispute about it will be, well, what was it?  When was it?  What

23  did you do to review to get that because if you then get in an

24  argument later on about whether there ought to be something that

25  comes up, then obviously counsel had better be prepared to

1    explain why it isn't something that could have been disclosed

2    earlier.  That's not a very exact line that I can draw but

3    that's the best that I can do in this setting.

4            Now as to the number of interrogatories, I appreciate

5    the government plaintiffs' position that ordinarily, this would

6    not be something the Court would take up.  That this is

7    something that to the extent that there is a set of

8    interrogatories that arguably exceed the permitted number that

9    the parties' usual burden is to ask for permission first, I

10   think an argument could be made that the number's not exceeded

11   but an argument could be made that it is.  I'm satisfied that

12   even if the number's exceeded that if a request had been made to

13   allow for an additional number that there would be good cause

14   for that and so I don't find that issue to be of any consequence

15   here.  I'm not going to prohibit it based on that.

16           I will require that the interrogatories be answered in

17   the fashion I just described and based upon the conversation

18   we've had here this morning between counsel about what the

19   government's aware of at this point in time that would be

20   supportive and that that -- those responses or those answers be

21   served no later than the end of business on Tuesday, April 30.

22           Just a moment.  All right.  I think that that answers

23   the specific issue that's been put in front of me.  Ms. Ball, am

24   I forgetting anything?  All right.  But I do want to hear from

25   counsel about whether there's some particular nuance of all of

1   this that you'd like some direction from me upon.  Mr. Su,

2   you're the (inaudible) here I suppose.  Maybe I'll hear from you

3   first.

4           MR. SU:  Your Honor, thank you.  My question for

5   clarification would be using Your Honor's analogy about, you

6   know, being in Idaho and paddling downstream is that as the

7   other streams feed into the river, the river gets larger and

8   larger and larger and so, you know, the items that would be

9   responsive to the interrogatories get bigger and bigger.

10          For instance, depositions are going on right now of

11  witnesses that, you know, may give testimony that supports our

12  allegations.  Is it Your Honor's expectation that we would have

13  an obligation to go through those deposition transcripts and

14  identify statements that support our allegations to the

15  Complaint?

16          COURT:  Well, my intention right now, Mr. Su, is that

17  you answer right now based upon what you know as of today.  All

18  right?  And going forward, I can't give you a precise test as to

19  that.  I think you have to make an assessment as to whether you

20  need to supplement in some fashion going forward and when to do

21  it.

22          I think the flip side of that is that Mr. Bierig and

23  his client need to be aware that if they're going to try to

24  press that issue to the nth degree in terms of trying to

25  preclude the government's use of evidence going forward, then

1    obviously the nature in which it's come together in this case

2    and the timing would go into a weighing of the equities of all

3    of that.  So you know, I think the attorneys need to work

4    closely and in good faith with each other on such matters.  I

5    just can't give you a precise answer about that.  I know you'd

6    like to have it but I don't think I can do that on this record.

7            MR. SU:  If I may supplement my question, Your Honor.

8            COURT:  All right.

9            MR. SU:  You know, the discovery rules contemplate that

10   there are many ways that a party can learn about something.  Not

11   just through, you know, one type of disclosure but it can be

12   through a deposition or through some other means and it seems to

13   us, Your Honor, that if the parties are learning about something

14   through a deposition they have taken, then they know about that.

15   They know that that's, you know, potentially in the case and can

16   be used for trial and it does seem to us that it would be

17   burdensome for us to continue to supplement these interrogatory

18   answers with additional evidence that is coming  through other

19   discovery.

20           COURT:  Well, then I would suggest, Mr. Su and Mr.

21   Bierig, if there are concerns about all of that and if they're

22   shared concerns, then you come to some sort of understanding

23   between yourselves about what constitutes a safe harbor for

24   those purposes.  I simply can't describe a safe harbor for you

25   from the bench right now on this record about this case that I

1    think would make any sense.

2             And so if you have concerns about that, then put all

3    the kind of protective boilerplate in your responses that you

4    think you need to do and go forward in whatever way that you

5    have to.  That's the best I can do for you.

6             All right.  Anything else, Mr. Su, that you'd have a

7    question about or want some further clarification?  Otherwise of

8    course the rules are simply going to govern, the Court's

9    pretrial orders that governs the case and the rules of

10   discovery, the rules of procedure.

11            MR. SU:  Understood, Your Honor.

12            COURT:  Okay.  Mr. Bierig?

13            MR. BIERIG:  Thank you very much, Your Honor.  I have

14   nothing to add on what Your Honor has ruled on.  I noted that

15   Your Honor has said in an e-mail I think from Ms. Ball that you

16   wanted to be apprised of the status of the meet and confer on

17   other issues.  Is that correct?

18            COURT:  I'm sorry.  Just a moment.  What Ms. Ball was

19   referring to was how it related to this particular dispute.

20            MR. BIERIG:  Oh, okay.  I think this dispute has been

21   fully aired.

22            COURT:  All right.

23            MR. BIERIG:  We do still have a couple of issues that

24   the parties are trying to work through but they're not before

25   the Court at this time.

1          COURT:  Yeah.

2          MR. BIERIG:  And I would want to note for Your Honor

3     that we also have an issue with Blue Cross of Idaho that we may

4     be bringing to the Court's attention but that again is not

5     before Your Honor now.

6          COURT:  All right.  Well, I think everybody's clearly

7     understood that these things really need to be worked out

8     between counsel if at all possible and I think that everybody's

9     been working hard towards that.  I've been I guess impressed

10    with the work of counsel in that regard and appreciative of it

11    as well just in a selfish respect given all the other work that

12    we have on our desks over here.

13         But, you know, that's why we're here for these purposes

14    and I think you understand that the reason I said let's do it

15    once a week was so that I can reasonably process that with Ms.

16    Ball's request and we're not just waiting every day for a

17    discovery dispute to land on the desk but we can try to

18    structure our other things around that as well.

19         All right.  If there's nothing else then, counsel, I'll

20    get out of your way.  I hope that helps solve at least this

21    present dispute and we'll be here to assist you with anything

22    that comes forward.

23         MR. BIERIG:  Your Honor, excuse me.  I did have one

24    question.  I'm sorry to bring this up at the last second.

25         COURT:  All right.

1           MR. BIERIG:  I want to be clear about when the

2    government is ordered to file the responses.  I know you said

3    it's next Tuesday but I think you said close of business which I

4    take it to be 5:00 Boise time; is that correct?

5           COURT:  Yes.  Mountain time.  Mountain Daylight Time.

6           MR. BIERIG:  Yes, because if we're going to have

7    issues, then we're going to have to present those issues to you

8    the following day on Wednesday.  We would really like to get

9    them as soon on Tuesday as possible.

10          COURT:  Well, here's my thinking in that regard.

11   There's a whole lot of information that's going to take a lot of

12   work from Mr. Su and his colleagues to do what you've asked them

13   to do.  I assume that they're going to be having one of those

14   thank God it's Friday like two more working days till Monday

15   weekends and then they would like to have Monday to finalize

16   things and look through everything carefully.

17          So hopefully, there won't be any further dispute but

18   then after you've had a chance to read it Monday night or

19   Tuesday night and Wednesday morning, if you think there is, then

20   you can let us know.

21          All right.  5:00 p.m., Mountain Daylight Time, Tuesday

22   the 30th.  All right, counsel.  Thank you.  We'll be in recess.

23          MR. BIERIG:  Thank you.

24              (Proceedings concluded.)

25

I, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


/s/ Tamara A. Weber                    4/24/13

Signature of Approved Transcriber         Date


Tamara A. Weber

Typed or Printed Name