UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC.<br><br>Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.<br><br>Defendant. | Case No. 1:12-CV-00560-BLW (Lead Case)<br><br>**PRETRIAL ORDER** |
| FEDERAL TRADE COMMISSION; STATE OF IDAHO<br><br>Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.; SALTZER MEDICAL GROUP, P.A.<br><br>Defendants. | Case No. 1:13-CV-00116-BLW |

The Court held a pretrial conference with all counsel on September 13, 2013. At that conference there was agreement on some issues, while other issues were left to the Court to resolve. This Pretrial Order sets forth the agreements, and the resolution of some of the disputes.

**Pretrial Order – page 1**

**Trade Secrets & Closing the Courtroom**

Under the First Amendment, and common law, court proceedings and records are presumptively open to the public. *Perry v. City and County of San Francisco*, 2011 WL 2419868 (9th Cir. April 27, 2011). More than a century ago, in an analysis that has only gained strength, Justice Oliver Wendell Holmes explained why: "[T]he trial of causes should take place under the public eye . . .because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884).

Because of the strong presumption of public access in this Circuit, before a court may enter a sealing order, it also must make "specific, on-the-record findings of the extraordinary need to keep a particular document or particular testimony secret." *Perry* at *21. General findings will not suffice. "[P]articularized findings of compelling interest must be placed on the record before a hearing is closed or a record is sealed" to assure that the court carefully analyzes the issue before removing records from the public view. *Id.* (citations omitted). These findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* (citations omitted).

Sealing orders – to the extent they are permitted at all – also must be narrowly tailored. The Circuit has mandated that "any interest justifying closure must be specified with particularity, and there must be findings that the closure remedy is narrowly confined to protect that interest." *Id.* (citations omitted). For this reason, "any sealing

**Pretrial Order – page 2**

order must consider and use less restrictive alternatives that do not completely frustrate the public's First Amendment and common law rights of access." *Id.*

Moreover, the presumptive right of access "is even more important where the events in the courtroom will have a broad impact on the public." *Id.* "[T]he public's interest in access to a proceeding involving the State's allegations of harm to the public weighs especially heavily in favor of access." *Id.* (quoting *California ex rel. Lockyer v. Safeway, Inc.*, 355 F.Supp.2d 1111, 1124 (C.D.Cal.2005)).

The presumptive right of access may give way upon a convincing showing that the testimony or document contains "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598 (1978). Closing the courtroom may be proper upon a "compelling" showing of potential competitive harm if confidential information is made publically available. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 429 (9th Cir. 2011).

In this case, there will be testimony regarding negotiations between the hospital parties and third-party payors. The testimony will concern sensitive trade secrets such as negotiating strategy, bargaining power evaluations, reimbursement policies, pricing, and future plans. Such information is extremely sensitive and, if made publically available, could result in serious damage to that entity's competitive standing. Thus, some limitation on public access is necessary to protect the confidentiality of such information.

While the need to protect this information is clear, the method of doing so is more complicated. The testimony of any particular witness may contain a combination of trade secrets and innocuous information. If the courtroom is closed each time the witnesses

**Pretrial Order – page 3**

treads into sensitive areas, and then repeatedly reopened when the witness addresses innocuous areas, the result will be disruption and delay.

Thus, when a witness is testifying in large part about sensitive business information – designated as Attorneys Eyes Only (AEO), a label discussed further below – the only realistic alternative is to close the courtroom for the entirety of their testimony. On the other hand, if the witness is to testify largely about innocuous matters – and any confidential testimony would be brief and separable – the courtroom could remain open until the discrete portion of confidential testimony began.

Cross-examination, however, does not present such neat boundaries.  While direct testimony is to some degree scripted, cross-examination is not, and the courtroom may need to be closed during an entire cross-examination because it will be impossible to predict when trade secrets may be disclosed.

This discussion demonstrates how the method of closure will depend in large part on the witness testifying and the stage of that testimony.  The Court will have to handle this on a witness-by-witness basis at the beginning, with the presumption that the Court's proceedings will be open.  As the trial progresses, a practice may develop that will allow the Court to protect the public's right to access while at the same time will ensure the confidentiality of sensitive trade secrets.

**Public Transcript – Parties Directed to Purchase Fifth Transcript**

As the discussion above shows, it will often be necessary to close the courtroom even though some of the witnesses' testimony might not touch on confidential information.  To mitigate the lack of public access, the Court will make a transcript

**Pretrial Order – page 4**

available to the public within 24 hours of that closed session.  The law authorizes the court reporter to charge for each transcript.  To provide this transcript to the public free of charge would not be fair to the court reporter.  Accordingly, the Court will direct counsel to agree among themselves as to how to pay the court reporter for this extra transcript that will be provided to the public.  The Court understands that the parties are now paying for four transcripts, so the Court is directing them to pay for a fifth, to be divided among them as they agree.  When agreement has been reached, counsel shall notify the Court's Law Clerk.

Each day when the public transcript is prepared, counsel shall go through it and provide to the public a redacted version that removes the material designated as AEO.

The parties have been provided with a Realtime Disclaimer by the court reporter.  The Court directs the parties to sign the Realtime Disclaimer and give it to the court reporter.

**Attorney Eyes Only Documents:**

The parties have reached an agreement – approved by the Court – as to three categories of information that would be properly designated as "Attorney Eyes Only" (AEO).  They are set forth below in numbers 1, 2, and 3.  The parties could not reach agreement on a fourth category and that is set forth below in number 4.

1. Current (within the last four years) documents referring to prices, costs, reimbursement rates, wages, compensation, budgets, projections or other financial information, not including documents that have been made public.

2. Current (within the last four years) documents discussing or referring to planning.

3. Current (within the last four years) documents referring to or discussing payor, employer, provider or network negotiations, negotiation strengths or weaknesses, bargaining power, or negotiation strategies or methodologies.

4. There is disagreement over a fourth category concerning current (within the last four years) contracts with physicians or facilities and the terms of recent (within the last four years) physician practice or facility acquisitions or affiliations. The Court will examine the submissions of the parties to resolve this issue.

**Trial Calendars**

The anticipated trial time for each day is set forth in the attached trial calendars. For each day that is designated as a "Full Day" on the calendar, the Court will proceed from 8:30 a.m. to 2:30 p.m. with two 15 minutes breaks. The Court will strictly enforce the 15 minute breaks. For those days where Court will not proceed on that schedule, the times are set forth on the calendar.

**On-The-Clock Time Allocation**

1. The parties will be allotted 89 hours of total time to try this case. The 89 hours was computed by estimating the total number of "Full Days" on the calendar (16 days; see attached calendars) and multiplying that by 5 hours, which is the number of hours in a typical trial day. That totals 80 hours. But this total does not include September 27th (when Court time will total 5.5 hours) and October 3rd (when

Court time will total 3.5 hours).  When those two days – totaling 9 hours – are added to the 80 hours, the total hours for trial becomes 89 hours.

2. The Court shall allocate the time equally to plaintiffs and defendants – each side shall get 50% of the total hours, or 44.5 hours per side.

    a. Plaintiffs St. Al's, FTC, Treasure Valley, and the State shall share their total of 44.5 hours to try their case.

    b. Defendants St Luke's and Saltzer shall share their total of 44.5 hours to try their case.

3. The Court will keep track of the time each party uses, and provide reports to counsel at the end of each trial day.

4. The clock is running on a party conducting opening statement, direct, cross, objections that are unsuccessful, and closing argument.

## Order of Proceeding

Generally, the plaintiffs shall proceed in the following order:

(1) St Al's;

(2) FTC;

(3) State;

(4) Treasure Valley

Generally, the defendants shall proceed in the following order:

(1) St. Luke's;

(2) Saltzer

## Notice of Next-Day Witnesses

**Pretrial Order – page 7**

Absent any agreement otherwise by counsel, witnesses (including those called by deposition video) will be identified as to when they will testify 4 court days in advance, including a list of any demonstrative exhibits to be used by said witnesses (which includes any witnesses to be called by deposition designation).

**Deposition Designation Objections**

Any party objecting to any part of a video deposition shall file that objection 3 court days in advance of the playing of that video deposition. The parties need a ruling by the Court 24 hours before that deposition video is scheduled to be played in order to edit the video in accord with the Court's ruling.

**Exclusion of Witnesses**

The parties agree to exclude from the trial any witness with significant responsibility for decision-making or negotiating – and any corporate representative – when there is testimony or discussion of material designated as AEO.

**Direct Exam During Opponent's Case-In-Chief**

A party will generally be prohibited during the case-in-chief of its opponent from conducting its own direct examination of witnesses called by that opponent, except when:

1. The party seeking to conduct the direct exam requests leave of the Court prior to beginning its cross exam of that witness; and

2. The proposed direct exam will be short and proportional to the cross exam.

3. For example, the Court will not allow a party to do 15 minutes of cross exam and 2 hours of direct exam, as it would unfairly intrude on the case-in-chief of the opponent.

**Pretrial Order – page 8**

4. Conversely, a short cross exam (15 minutes or so) and an equally short direct exam (15 minutes or so) is not intrusive, and will save the time and expense of recalling the witness many weeks later for a short direct exam.

5. The Court will also take into account the convenience of the witness.

6. By requiring a party to make the request for direct exam before beginning the cross exam, the Court intends to give the opponent an opportunity to object, and to hear argument on whether the direct exam should be permitted.

DATED: September 17, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court

## September 2013

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 Full Day | 24 Full Day | 25 Full Day | 26 Full Day | 27 Trial from 9am to 5pm today - lunch is 11:30 am to 1:30 pm | 28 |
| 29 | 30 Full Day | | | | | |

**Pretrial Order – page 10**

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| October 2013 | | | | | | |
| | | 1<br>Full Day | 2<br>Full Day | 3<br>Trial will run from 8 am to noon - one 15 minute break | 4<br>No Trial<br>CDA District Conf | 5 |
| 6 | 7<br>Full Day | 8<br>Full Day | 9<br>Full Day | 10<br>Full Day | 11<br>Full Day | 12 |
| 13 | 14<br>Holiday<br>No Trial | 15<br>Full Day | 16<br>Full Day | 17<br>Full Day | 18<br>Full Day | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

**Pretrial Order – page 11**