UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC.<br><br>Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.<br><br>Defendant. | Case No. 1:12-CV-00560-BLW (Lead Case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| FEDERAL TRADE COMMISSION; STATE OF IDAHO<br><br>Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.; SALTZER MEDICAL GROUP, P.A.<br><br>Defendants. | Case No. 1:13-CV-00116-BLW |

## INTRODUCTION

The Court has before it a motion to exclude certain testimony from Dr. Alain Enthoven, St. Luke's expert witness. The motion was fully briefed and argued before the Court. For the reasons expressed below, the Court will deny the motion.

## LEGAL STANDARD

Memorandum Decision & Order – page 1

Under Federal Rule of Evidence 702, this Court may exercise discretion to allow expert testimony if the testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "is based on sufficient facts or data;" (3) "is the product of reliable principles and methods;" and (4) the expert "has reliably applied the principles and methods to the facts of the case."  Rule 702 requires this Court to determine that the expert testimony "both rests on a reliable foundation and is relevant to the task at hand."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.2010) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993)).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. at 565.

Because this is a bench trial "there [is] little danger under the circumstances that the court [will be] . . . unduly impressed by the expert's testimony or opinion," and the Court can give "it the weight [the Court feels] it deserved."  *Shore v Mohave County, State of Ariz.,* 644 F.2d 1320, 1322-23 (9th Cir. 1981).

## ANALYSIS

Plaintiffs seek to exclude any testimony from Dr. Enthoven on the quality-related benefits of the Saltzer deal.  Plaintiffs point to his deposition testimony where he conceded that he had not read any of St Luke's PSAs.  From this, plaintiffs conclude that he "has *no* knowledge concerning the types of contractual arrangements St Luke's has with its acquired physician groups," and thus has "no way of knowing whether the acquisition creates the requisite integration to achieve the purportedly greatest benefits of

**Memorandum Decision & Order – page** 2

integrated patient care." *See Plaintiffs' Brief (Dkt. No. 160)* at pg. 9 (emphasis in original).

It is true that when asked if he had "read any St Luke's PSA," he answered "No." *See Dr. Enthoven Deposition (Dkt. No. 179-4)* at p. 139. At another section of his deposition, he states that he "didn't have time" to read any of St. Luke's quality based compensation measures. *Id.* at pp. 158-159. However, Dr. Enthoven did interview six top executives from St. Luke's and Salzter. He also reviewed thirty depositions.

Plaintiffs do not point to any testimony where Dr. Enthoven inaccurately characterized a provision of a St. Luke's PSA. In his deposition testimony, Dr. Enthoven demonstrated a general familiarity with St. Luke's strategy of changing its compensation model from one focusing on volume to one focusing on quality. *Id.* at p. 68. He testified extensively on the quality-enhancing benefits of moving away from the fee-for-service model of compensation and toward the quality-based model of compensation. It therefore appears that he learned something about St. Luke's compensation strategy from his six interviews and his review of the thirty depositions. The Court therefore refuses to exclude his testimony because he did not read the PSAs.

Plaintiffs also argue that Dr. Enthoven is unqualified to "provide opinions relating to health information technology, such as electronic medical record systems ("EMR") and data analytic tools." *See Plaintiffs' Brief (Dkt. No. 160)* at p. 4. Plaintiffs point out that Dr. Enthoven admitted during his deposition testimony that "I'm not a healthcare IT expert." *See Dr. Enthoven Deposition (Dkt. No. 179-4)* at p. 143. Plaintiffs argue that

**Memorandum Decision & Order – page** 3

because Dr. Enthoven demonstrated no familiarity with these tools, his testimony on them should be excluded.

The Court disagrees. Dr.Enthoven has written extensively on how feedback loops, enabled by technology, are crucial to promote integrated care. More specifically, he studied the Whitecloud tool and interviewed executives with St. Luke's and Saltzer on their EMR systems. He will not testify about the technical aspects of these tools, but rather will explain how their use promotes high quality care. In other words, he will testify about function, not mechnics; he will testify as an economist, not a programmer. On that basis, his opinions appear to satisfy the relevance and reliability requirements.

Finally, plaintiffs seek to exclude his testimony on the competitive effects of the Saltzer deal. They point out that he has admitted that he is not an expert in "antitrust economics." *Id.* at p. 197.

Plaintiffs do not, however, identify any specific testimony where Dr. Enthoven opines on antitrust law or the legal implications of the facts in this case. He will testify that "it is incorrect to conclude simplistically that any increase in St. Luke's size would be anti-competitive." *See Report (Dkt. No. 160-2)* at p. 127. The Court interprets this as a statement of economics, not a statement of law. As such, it is well within the expertise of an economist who studies these matters. Dr. Enthoven has written extensively on the effects of competition in the health care market, and is a prominent authority in this field. Economists have insights to offer on competition that do not depend on having any expertise in antitrust law. If Dr. Enthoven strays from offering the insights of an

economist – and testifies about antitrust law – his testimony may be stricken. But no such testimony has been identified yet, and so there is nothing to strike.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude the testimony of Dr. Enthoven (docket no. 158) is DENIED.

DATED: October 15, 2013

B. Lynn Winmill
Chief Judge
United States District Court