Keely E. Duke
ISB 6044; ked@dukescanlan.com
Duke Scanlan & Hall, PLLC
1087 W. River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

David Ettinger
dettinger@honigman.com
Lara Fetsco Phillip
lara.phillip@honigman.com
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone (313) 465-7368

*Attorneys for Saint Alphonsus Medical Center-Nampa, Inc., Saint Alphonsus Health System, Inc., and Saint Alphonsus Regional Medical Center, Inc.*

## UNITED STATES DISTRICT COURT

## IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC.<br><br>Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD. AND ST. LUKE'S REGIONAL MEDICAL CENTER. LTD.<br><br>Defendants. | Case No. 1:12-CV-00560-BLW (Lead)<br><br>**MEMORANDUM IN SUPPORT OF SAINT ALPHONSUS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

The Saint Alphonsus Plaintiffs[1] ("Saint Alphonsus") hereby submit this Memorandum in support of their Motion for Attorney Fees and Costs ("Motion").[2]  Under the antitrust laws, the "substantially prevailing" party is entitled, as a matter of right, to recovery of its reasonable attorneys' fees and costs.  In support of its Motion for Attorneys' Fees and Costs (this "Motion"), Saint Alphonsus hereby explains the basis for recovery by Saint Alphonsus.

## I.     SAINT ALPHONSUS SUBSTANTIALLY PREVAILED AND THEREFORE IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS

### A.     Applicable Legal Standard

Section 16 of the Clayton Act, 15 U.S.C. § 26, provides that "[i]n any action under this section in which the plaintiff *substantially prevails*, the court shall award the cost of suit, including a reasonable attorney's fee to such plaintiff."  (Emphasis added).  The Ninth Circuit has held that to be a "prevailing party" under Section 16, there "must simply be a causal relationship between the litigation brought and the practical outcome realized."  *Southwest Marine, Inc. v. Campbell Industries*, 732 F.2d 744 (9th Cir. 1984)

Attorneys' fees, as well as costs, are similarly available for private plaintiffs that prevail in an action under the Idaho Competition Act, which provides that any person injured by any action prohibited by the act may "bring an action for injunctive relief, damages, and, *as determined by the court, reasonable costs and attorney's fees*."  I.C. 48-113 (emphasis added).

Saint Alphonsus' claims were brought under both Section 16 of the Clayton Act and the Idaho Competition Act.  Accordingly, it is entitled to its attorneys' fees under both statutes.  It is

---

[1] Saint Alphonsus Medical Center- Nampa, Saint Alphonsus Health System, Inc., and Saint Alphonsus Regional Medical Center, Inc.

[2] Saint Alphonsus is seeking its attorneys' fees and costs through January 31, 2014.  Saint Alphonsus is not seeking appeal-related fees and costs at this time, but reserves the right to supplement its fee request at a later date.

also entitled to its non-taxable costs pursuant to I.C. 48-113 and its taxable costs under I.C. 48-113 and LR 54.1 and 28 U.S.C. 1920.[3]

B.      **Saint Alphonsus Substantially Prevailed By Obtaining Permanent Injunctive Relief**

There is no doubt that Saint Alphonsus has "substantially prevailed."  This Court stated specifically in its Memorandum Decision and Order (Dkt.463) at 1 and, again, in its Findings of Fact and Conclusions of Law (Dkt.464) at 1, that it "finds for the plaintiffs."

The first Complaint filed in this case was, of course, filed by Saint Alphonsus and Treasure Valley Hospital seeking to "preliminarily and permanently enjoin St. Luke's from acquiring Saltzer."  Complaint (Dkt. 1) ¶ 147.[4]  The Court has granted that relief; its Judgment provides that "St. Luke's is permanently enjoined from acquiring the Saltzer Medical Group." [5]

Moreover, theories in Saint Alphonsus' Complaint have formed the basis for this Court's ruling.  Saint Alphonsus and Treasure Valley Hospital (the "Private Plaintiffs") alleged, prior to the Government Plaintiffs' filing, that this transaction violated the antitrust laws because, among other things, "[c]ompetition in the primary care physician services market in Nampa…would be substantially lessened."  *Id*. ¶ 133.   The Private Plaintiffs further alleged that after the transaction, "St. Luke's will become a 'must-have' system for health plans seeking to serve companies with employees in Nampa" (*id*. ¶ 86), which "will give St. Luke's much-enhanced

---

[3] Saint Alphonsus is separately and contemporaneously filing a Bill of Costs for its taxable costs.

[4] Although Saint Alphonsus also requested damages initially in its Complaint, Saint Alphonsus has never pursued that relief and none of the fees requested in this Petition relate to a claim for damages.

[5] On January 15, 2013 (still months before the FTC filed suit), the Private Plaintiffs amended their Complaint to request the Court to "[r]equire St. Luke's to fully divest Saltzer and all its assets."  Amended Complaint (Dkt. 63) ¶ 153.  This relief was also granted by the Court, which in its Judgment (Dkt. 471) ordered that, "St. Luke's shall fully divest itself of Saltzer's physicians and assets…."

bargaining clout in contract negotiations and the ability to extract higher rates for inpatient services at all of its hospitals." *Id.* ¶ 88; See also *id*. ¶¶ 59-63 (allegations that primary care physician services is a relevant product market). Those are precisely the grounds on which this Court acted. See e.g. Conclusions of Law ¶¶ 23; 25. The Court also ruled in favor of the Private Plaintiffs' allegations regarding referrals. See Complaint ¶¶ 53, 95 & 97; Findings of Fact, ¶¶ 136-140.

### C.   Saint Alphonsus Is Entitled to Its Attorneys' Fees Relating to the Preliminary Injunction Proceedings

While there is no reason to separate out the preliminary injunction proceedings from the rest of Private Plaintiffs' efforts in this case, Private Plaintiffs also "substantially prevailed" on their preliminary injunction request. Private Plaintiffs' goal in seeking a preliminary injunction was to preserve the status quo prior to trial.[6] See Private Plaintiffs' Motion for Preliminary Injunction (Dkt. 22) at 2 ("an injunction will properly maintain the status quo"). That goal was achieved. While the Motion for Preliminary Injunction was denied, the Court based its decision on "four critical assumptions": that the case would proceed on a fast track to trial, that "prior to trial, there will be no measureable reduction in referrals to St. Al's from Saltzer physicians," that the "integration of St. Luke's and Saltzer will proceed gradually," and that the "acquisition can be unwound and divestiture ordered if St. Al's prevails on its antitrust claims." Memorandum Decision and Order dated December 20, 2012 (Dkt. 47) at 8.

These assumptions were based in part on concessions by St. Luke's provided in response to the Private Plaintiffs' Motion. As St. Luke's counsel stated at closing argument, "the private

---

[6] The Private Plaintiffs filed their Preliminary Injunction Motion after St. Luke's and Saltzer determined that they were going forward with their transaction despite the request of the Idaho Attorney General that they delay until the FTC and Attorney General had completed their investigation. See Private Plaintiffs' Complaint (Dkt.1) ¶¶ 47-52 and Exhibits A-D thereto.

plaintiffs *succeeded* in *securing a commitment at the preliminary-injunction hearing* that St. Luke's would not integrate Saltzer into the Epic EHR and would not take other integrative steps that would make divestiture impossible." Trial Tr. 3792:1-5 (emphasis added).

Thus, by virtue of St. Luke's concessions and the Court's "critical assumptions," Saint Alphonsus accomplished its goals. That means that it "substantially prevailed" under controlling authority set forth in *Southwest Marine, Inc., supra* (holding that Plaintiff substantially prevailed even where its motion for preliminary injunction was denied because filing of lawsuit caused Defendants to give the plaintiff the relief sought). The Ninth Circuit stated that to be a "prevailing party" there "must simply be a causal relationship between the litigation brought and the practical outcome realized." *Id.* That conclusion certainly applies here.

## II.   APPLICABLE LEGAL STANDARD IN ASSESSING AMOUNT OF RECOVERABLE ATTORNEYS' FEES

The fees sought by Saint Alphonsus are entirely reasonable given the magnitude of this case and the outstanding result obtained by the Plaintiffs. This Court discussed the relevant standard for assessment of legal fees in *Alliance for Property Rights and Fiscal Responsibility v. City of Idaho Falls*, 2013 WL 551028 (D. Idaho, Feb. 12, 2013) at *4-6 (Winmill, J.). The standard requires determination of a "lodestar" reasonable hourly rate and number of hours, coupled with consideration of other factors which can "reduce or enhance" the lodestar amount:

> First, the Court must calculate the "lodestar figure" by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *See, e.g., Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Second, the Court must decide whether to enhance or reduce the lodestar figure based on several factors—known as the *Kerr* factors—to the extent those factors are not already subsumed in the initial lodestar calculation. *Id*. The relevant *Kerr* factors are: (1) time limitations imposed by the client or the circumstances; (2) the amount involved and the results obtained, (3) the experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).[3]

FN[3]  There are six additional *Kerr* factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, and (6) whether the fee is fixed or contingent.  *Kerr*, 526 F.2d at 70. Factors one through five, however, are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir.1996).

Application of these principles supports the award to Saint Alphonsus of at least the full amount of the fees it seeks herein.

## III.    <u>THE HOURLY RATES HERE WERE REASONABLE</u>

Saint Alphonsus has been represented in this action by Honigman Miller Schwartz & Cohn LLP as lead counsel, Duke Scanlan & Hall, PLLC as local counsel, and Gnoesis, which provided attorneys engaged in review of the hundreds of thousands of documents produced in this case.[7] Saint Alphonsus is seeking the recovery of legal fees incurred by Honigman, Duke Scanlan and Gnoesis as follows: Honigman ($5,314,593); Duke Scanlan ($856,255.50); and Gnoesis  ($1,171,608.25).  Ettinger Decl.¶ 13, Duke Decl.¶ 9.

All of Saint Alphonsus' lawyers utilized reasonable hourly rates.  Honigman's hourly rates ranged from $150 to $770 (for David Ettinger's work), with an average rate of $377.  Duke Scanlan's hourly rates ranged from $120 to $250 (for Keely Duke's rate).  Gnoesis' average hourly rate was $35.  Ettinger Decl.¶ 14.  In each case, their rates are at or below those in the relevant "legal community."

"To determine a reasonable hourly rate, the district court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation."  *See Alliance, supra* at *4-6 (Winmill, J.) (citations omitted).  *See*

---

[7] Fees incurred by contract attorneys for document review are recoverable as attorneys' fees. See *Gabriel Technologies Corp. v. Qualcomm, Inc*. 2013 WL 410103, Case No. 08cv1992, (S.D. Cal. Feb. 1, 2013) at *9-10.

*also Stevedoring Services of AM, Inc. v. DIR, Office of Workers' Comp. Programs*, 445 F. App'x 912, 913 (9th Cir. 2011) (citations omitted).   The determination of what is "similar work" necessarily varies depending on the role of counsel.   The applicable "relevant legal community" for determination of a reasonable hourly rate for lead counsel in this case is the national community of lawyers engaged in complex antitrust litigation in federal court.

While the rates prevailing in the *local* community of the court usually provide the applicable standard for assessing hourly rates, "[a] narrow exception to this rule provides that rates from another community are acceptable where local counsel are unwilling or unable to provide the necessary legal services because they lack the experience, expertise or specialization required to properly handle the matter."   *United States v. Nat'l Rehab Partners Inc*., 2007 WL 2790397 at *3 (DID September 24, 2007) (Winmill J.). *See also Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (district court did not abuse its discretion in awarding fees at San Francisco rates where the evidence established that law firms in Sacramento (the forum) "with the requisite expertise and experience to handle this type of complex . . . litigation were unavailable").   Because the "District of Idaho has a far smaller pool of attorneys from which to choose for specialized matters …it takes less of a showing … than it would in larger jurisdictions to justify out-of-forum rates."   *Hash v. United States*, No. 1:99-cv-00324, 2012 WL 1252624, at *5 (D. Idaho Apr. 13, 2012).

In fact, there is no "similar work" to the health antitrust advocacy performed by lead counsel in this case that is performed by attorneys in Idaho.   There are no health antitrust specialists in Boise, and no lawyers with the experience to address the range of complex health

care and antitrust issues raised in this case.  Westermeier Decl. ¶¶ 6-7, Duke Decl. ¶ 2, Ettinger Decl. ¶ 10.[8]

Honigman's average rates of $377 are below the rates approved as reasonable in a wide range of federal antitrust cases nationally.  *See e.g.  McKesson Corp. v. Islamic Republic of Iran*, 935 F. Supp. 2d 34 (D. D.C. 2013) ($10 million antitrust fee awarded on 18,500 hours of work, reflecting an average hourly rate of approximately $540); *In re Oxycotin Antitrust Litigation* (Case No. 1:04-md-01603 (Dkt. 360), S.D.N.Y., Jan. 25, 2011 at 8 (reasonable lodestar of $5.2 million for 10,174 hours; average hourly rate of approximately $510 per hour) (Ex. 1 to Caselaw Addendum); *Shames v. Hertz Corp.*, Case No. 07-CV-2174, 2012 WL 5392159 (Nov. 5, 2012, S.D. Cal.) at 17-18 (holding, in antitrust action, that lodestar calculation of $6.4 million at a blended hourly rate of $440 was "presumptively reasonable"); *In re Flonase Antitrust Litigation*, 951 F. Supp. 2d 739, 750-51 (E.D. Pa. 2013) (awarding $50 million in attorneys' fees, more than triple the lodestar of $16.8 million that was calculated at an average billable rate of $407 per hour); *Hall v. AT & T Mobility LLC*, No. 07-5325. 2010 WL 4053547 at *20 (Oct. 13, 2010, D. N.J.) ($7.7 million lodestar calculated at a blended hourly rate of $411 per hour); *In re Insurance Brokerage Antitrust Litigation* (Dkt. 2:04-cv-05184, DNJ, Oct. 22, 2004) at 35 (blended hourly rate of approximately $411.16 found to be reasonable) (Ex. 2 to Caselaw Addendum); *Meijer, Inc. v. Barr Pharmaceuticals, Inc.* Case No. 1:05-cv-02195 (Dkt. 210), D.D.C. Apr. 20, 2009 at 6 (reasonable lodestar of $7,226,504 over 17,488.7 hours for an average hourly rate of $413.21) (Ex. 3 to Caselaw Addendum); *In re Nifedipine Antitrust Litigation*, Case No. 1:03-MC-323

---

[8] Virtually all of the parties in this case have relied on out-of-town counsel, including St. Luke's (Chicago), the Idaho Attorney General (Madison, Wisconsin) and, of course, the FTC.

(D.D.C. Jan. 31, 2011) (Dkt.333) (Ex. 4 to Caselaw Addendum) at 2 (reasonable lodestar of $14.1 million over 31,030 hours for a blended hourly rate of $454).[9]

The same result obtains when assessing the hourly rate of Mr. Ettinger ($740-770 per hour).  The proper level of hourly rates should reflect the "experience, reputation and ability of the attorneys. . ." *Alliance for Property Rights, supra*.  Mr. Ettinger's experience and reputation in the health antitrust area are at the highest level.  He has been practicing health antitrust law across the United States for more than 30 years, and has litigated a number of landmark cases in the field.  He has worked on many health care mergers and litigated more than 20 health care antitrust cases.  Mr. Ettinger and Honigman also have significant experience on the precise issues addressed in this case.  Ettinger Decl. ¶¶ 3-5.

Under the circumstances, Mr. Ettinger's rate should be assessed against those charged by the most senior antitrust attorneys.  In fact, it is well below the rates charged by those lawyers.  Mr. Ettinger's hourly rate is below senior partner rates charged in Chicago and significantly below rates charged in New York and Washington DC.  *Id.*  See National Law Journal's 2012 survey of hourly billing rates at AmLaw 250 firms (Ex. 5 to Ettinger Decl.) utilized by Honigman in setting rates, which reported hourly rates of $835 for senior partners at two of the three participating Chicago firms; hourly senior partner rates ranging from $960 - $1,200 at Washington DC firms; and hourly senior partner rates as high as $1,200 per hour at New York

---

[9] Significantly, several of these awards are as much as 10 years old.  They therefore should be properly compared to this case only after making an adjustment for inflation in the relevant hourly rates.  Moreover, these calculations include all counsel – lead and local – and therefore understate the average hourly rate charged by lead counsel.  Nevertheless, the reasonable "blended" rates in these cases even without such adjustments exceed the Honigman rates here.

firms.  *Id*. ¶ 21.  See also *Id*. at ¶ 23 and Exhibits 8-11 thereto.[10]

Indeed, Mr. Ettinger's rates are well below those of senior antitrust attorneys at Sidley Austin, St. Luke's counsel.  *See e.g.* Order Approving Final Fee Applications and corresponding Fee Applications in *In re Dynegy Holdings, LLC*, Case No. 11-38111 (S.D.N.Y) (John Levelle; $850) (Ex. 6 to Ettinger Decl.); *In re Tribune Company*, Case No. 08-131141 (U.S. Bank Ct. D. Del) (John Treece; $850) (Ex. 7 to Ettinger Decl.).

The same conclusion applies to the rates of Duke Scanlan, though those rates (for local counsel) are appropriately compared to prevailing rates in Boise.  Duke Decl. ¶ 6.  The hourly rates paid by Saint Alphonsus to Duke Scanlan range from $250.00 to $120.00 per hour.  Duke Decl. ¶ 10.  The rates are significantly below prevailing Boise rates.  Westermeier Decl. ¶8; Duke Decl. ¶ 10.  Certainly, the experience and ability of Ms. Duke and Mr. Scanlan more than appear to justify these rates.  Westermeier Decl. ¶4; Duke Decl. ¶ 2 & 6.

The rates for the document review attorneys at Gnoesis, supervised by Honigman, are certainly reasonable.  They range from $35 to $45 per hour.   Ettinger Decl. ¶ 14.  Courts have approved substantially greater rates for document review firms.[11]  *See e.g. Gabriel Technologies Corp. v. Qualcomm, Inc*. 2013 WL 410103, Case No. 08cv1992, (S.D. Cal. Feb. 1, 2013) at *10 ($55 to $67 per hour); First and Final Fee Application (Dkt 1802) and Order Granting First and Final Fee Application (Dkt 1887) in *In re TCI Holdings, LLC*, Case No. 09-13654, U.S. Bank Ct. D. N.J. (attached hereto as Exhibit 5).  Gnoesis has extensive experience in conducting large

---

[10] Courts rely on billing rate survey data to establish prevailing market hourly billing rates.  *See e.g. McKesson Corp*., 935 F. Supp. at 41 (relying on survey of billing rates at AmLaw 100 firms to establish reasonableness of hourly rates).

[11] All Gnoesis attorneys were billed at $35 per hour except for Jeffrey Roush, an attorney who managed the effort, who was billed at $45 per hour.

scale document reviews and have conducted more than 100 document reviews in the past two years alone, and in more than 20 antirust matters specifically. Ettinger Decl. ¶ 38.

## IV. THE HOURS EXPENDED IN THIS CASE BY SAINT ALPHONSUS' ATTORNEYS WERE REASONABLE

### A. Overall Considerations

The number of hours (and total dollars expended in this case by Saint Alphonsus counsel ($7,342,456), while quite substantial, was reasonable, given the magnitude of the case and its rapid prosecution. See Ettinger Decl. ¶ 7, Duke Decl. ¶¶ 4 & 9-10, and spreadsheets attached thereto. [12] This case involved more than 80 depositions, production and review of more than 600,000 documents, and a four week bench trial. Ettinger Decl. ¶ 29 & 38. It also involved a series of complex factual issues, ranging from electronic medical records to health care quality measurement to physician referral patterns.

Given the scope of the case, Saint Alphonsus' attorneys conducted it in an extremely "efficient" fashion, avoiding duplication and conducting work at the lowest available rates. Honigman and Duke Scanlan lawyers played complementary roles and avoided duplication between them and with other Plaintiffs' counsel. Ettinger Decl.¶ 18. A single lawyer for Saint Alphonsus attended each deposition and only two lawyers for Saint Alphonsus attended the trial. Ettinger Decl. ¶¶ 36. Saint Alphonsus divided up work whenever appropriate with counsel for the FTC and the Idaho Attorney General. *Id.* ¶ 33. Document review attorneys were utilized to

---

[12] A small number of time entries in the spreadsheets regarding communications with prospective third party witnesses and other privileged matters have been generalized so as not to reveal privileged information. Time entries may be redacted in order to avoid disclosure of information protected by attorney work-product privilege. See *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1285-86 (9th Cir. 2004). Other entries were revised to provide context and more detail in order to assist the Court in assessing the reasonableness of the time expended.

reduce costs.[13]   See Ettinger Decl. ¶¶ 38; Westermeier Decl. ¶12. Decisions as to tasks to be performed were carefully supervised by Saint Alphonsus' General Counsel to avoid unnecessary expense.  Westermeier Decl. ¶ 10.

The number of hours and total dollars here ($7.3 million) are not at all unusual when compared to other antitrust cases, which often involve similar or even substantially greater expenditures deemed reasonable.  See e.g. *McKesson, supra* ($10 million fee award); *Oxycotin, supra* ($5.2 million); *Meijer, Inc., supra* ($7.2 million lodestar); *Flonase, supra* ($16.8 million lodestar); *Shames, supra* ($5.1 million fee award); *Hall, supra* ($7.7 million lodestar) and *Nifedipine, supra* ($14.1 million lodestar).[14]

The work done by Saint Alphonsus' counsel appropriately addressed both the issues unique to the Private Plaintiffs and the common issues contained both in the Private Plaintiffs' complaint and the Government Plaintiffs' complaint.[15]  The work done on these common issues was not duplicative and substantially contributed to the results in the case.  This included significant contributions by Saint Alphonsus witnesses to evidence on the common issues, including relevant geographic market, entry, managed care negotiations, quality gains achieved without employing physicians, and Saltzer's competitive strength; work done by Honigman based on the insights it received from Saint Alphonsus on critical aspects of the common case; areas in which David Ettinger provided substantial expertise; and the results of efforts undertaken by Saint Alphonsus' counsel before the Government Plaintiffs joined the case.  See Ettinger Decl. ¶¶ 28.

---

[13]  Gnoesis' fees averaged less than $1.40 per document reviewed.  Ettinger Decl. ¶ 43.

[14]  Saint Alphonsus expects that St. Luke's fees are substantially higher than Saint Alphonsus' fees.

Many specific findings by the Court were based directly on testimony elicited by Saint Alphonsus' counsel.  See Ettinger Decl. ¶ 32. Additionally, Mr. Ettinger cross-examined key defense trial witnesses on the "quality" defense (Enthoven, Pate, Priest, Kee and Souza), the claims regarding the alleged harm to Saltzer from divestiture (Ahern, Kaiser, Kunz and Savage) and the likely competitive harms from the acquisition (Page).  *Id.*  Mr. Ettinger addressed the quality defense at length in closing argument.  The employment by Saint Alphonsus of a dedicated staff of document reviewer attorneys provided important support for the efforts of all the Plaintiffs. *Id.* ¶ 39.

For all these reasons, the amount of hours spent here, while certainly substantial, were reasonable given the vast scope of this case.

### B.    Saint Alphonsus Is Entitled to Fees Incurred in Preparing for the Litigation

Saint Alphonsus is seeking fees for both work done during the litigation and work done specifically to prepare for the lawsuit.  See Ettinger Decl. ¶ 26.  The case law establishes that such pre-filing fees are appropriate and recoverable.  *Sierra Club v. U.S. E.P.A.*, 625 F. Supp. 2d 863, 870-871 (N.D. Cal. 2007) (holding that time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation") (citation omitted); *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 987 & n. 51 (9th Cir. 2001).

### C.    The Fact That Some Issues Were Not Decided Does Not Affect Saint Alphonsus' Entitlement To Fees

The fact that the Court did not need to reach all the additional issues raised by the Private Plaintiffs does not in any way reduce the fees which should be awarded to Saint Alphonsus'

---

[15] The Federal Trade Commission is not seeking its attorneys' fees, though the Idaho Attorney General is doing so.

counsel.  The Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), makes clear that where excellent results are obtained, the fact that a Court did not "reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."  461 U.S. at 435.  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  461 U.S. at 440.

The Supreme Court's words apply squarely to this case.  There is no doubt that Saint Alphonsus obtained "substantial relief," divestiture.  The Court did not find it necessary to reach the Private Plaintiffs' evidence of effects on alternative markets, though it did address, and rely upon, the evidence brought by Private Plaintiffs on referrals.  Of course, since the parties did not know in advance that this would be the case, they needed to present all their evidence.  Under the controlling ruling of the Supreme Court, this should not diminish the fee award here.

The same conclusion is supported by another established legal principle.  "[I]f a plaintiff files separate claims arising out of the same 'common core of facts' or that are based on 'related legal theories,' the request for attorneys' fees should not be divided on a 'claim-by-claim basis.'" *Alliance, supra* at *5 (D. Idaho, Feb. 12, 2013) (Winmill, J.) (citing *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009)).  The additional claims brought by the Private Plaintiffs certainly arose out of the same "common core of facts," the acquisition of Saltzer Medical Group by St. Luke's.  They were also certainly based on "related legal theories," theories under the antitrust laws.  Thus, there is no basis for dividing the attorneys' fees on a claim-by-claim basis.

## V.      OTHER FACTORS ALSO JUSTIFY THE CONCLUSION THAT THE FEES HERE WERE REASONABLE

### A.      Novelty And Difficulty Of The Case

The other relevant factors identified in *Alliance* also support the conclusion that the fees

charged by Saint Alphonsus' lawyers are reasonable.  This includes consideration of the "novelty and difficulty of the questions presented" and "skill requisite to perform the legal services properly," *Alliance, supra*.   This was the first litigated antitrust case involving a hospital acquisition of a physician practice.  Ettinger Decl. ¶ 6.  It was also the first case in which a defendant argued that the needs of health care reform justify hospital acquisition of physician practices.  *Id.*.  As this Court noted, "it seems like we're thrust right into the middle of a debate which really may be one of the two or three most significant challenges, both economic, social, and what have you, that our country is facing."  Trial Tr. 3869:2-5.  Litigation on these issues required a firm with substantial experience with regard to both the health care industry and antitrust law.

### B.  Time Limitations

The fees charged were also justified in light of the "time limitations imposed by . . . the circumstances." *Alliance, supra*.  The Court set the case on a very rapid schedule requiring completion of massive discovery (hundreds of thousands of documents and more than 80 depositions) in a few months, followed by a four week trial.  The case required a great deal of intensive work performed by highly competent counsel, skilled in both the substantive issues and in the management of complex litigation on a very tight schedule.  The volume of effort also precluded lead counsel from conducting significant other work.  *See Alliance, supra*  ("The preclusion of other employment by the attorney due to acceptance of the case. . .").

### C.  Amounts Involved And Results Obtained

#### 1.  The Issues At Stake Justified The Expenditure In This Case

The "amount involved" in this case, *Alliance, supra*, also justifies recovery by Saint Alphonsus of at least its actual attorneys' fees here.  Saint Alphonsus' competitive and financial position were in significant jeopardy as a result of this transaction.  Saint Alphonsus' projections

revealed that it stood to lose millions of dollars annually at its Saint Alphonsus Nampa facility if Saltzer were acquired by St. Luke's.  See Plaintiffs' Corrected Proposed Findings of Fact (Dkt. 430) ¶¶ 880-891.  Additionally, it faced the risk that its Saint Alphonsus Health Alliance network would lose Saltzer from the network, thereby significantly impeding its ability to offer a competitive network to payors and employers.  *Id.* ¶¶ 739-740; 794-808.  Finally, Saint Alphonsus faced the risk that this acquisition of substantial numbers of primary care physicians by St. Luke's would lead other specialists to refer their cases to St. Luke's rather than to Saint Alphonsus or to become acquired by St. Luke's.  *Id.* ¶¶ 910-916.  Given the magnitude of what was at stake, the efforts made here, and the employment of expert national counsel, were certainly justified.

### 2.       **The Results Obtained Involved Virtually Complete Relief**

The "results obtained" here, *Alliance supra*, complete and full divestiture, also support the fees sought.  Divestiture was exactly what Saint Alphonsus sought, and eliminates the prospect of serious harm to Saint Alphonsus. [16]

The Private Plaintiffs also argued specifically for divestiture in closing argument, Trial Tr., 3851:17-3852:4, and in their separate Plaintiffs' Corrected Proposed Findings of Fact and Conclusions of Law (Dkt. 430) ¶¶ 1059-1062.  The Private Plaintiffs argued there that "[o]nly a complete divestiture of Saltzer will address the anticompetitive effects . . . in the relevant hospital and surgical facilities markets . . . . in order to prevent the loss of referrals from Saltzer and to assure that the Saltzer physicians are available to contract with competing networks." *Id*. 1059.  That relief was obtained, and the expenditures to achieve that result were certainly justified.

## VI.     SAINT ALPHONSUS SHOULD BE AWARDED NON-TAXABLE COSTS

In addition to its taxable costs, Saint Alphonsus is entitled pursuant to the Idaho Competition Act, I.C. 48-113, to its reasonable non-taxable costs.  Section 48-113 of the Idaho Competition Act specifically provides that any person injured by anything prohibited by the act may "bring an action for injunctive relief, damages, and, as determined by the court, reasonable costs and attorney's fees."

Saint Alphonsus incurred the following non-taxable costs in connection with this case:[17]

| | |
|---|---|
| Airfare - Honigman | $60,366.06 |
| Computer Research - Honigman | $51,866.15 |
| Courier/Fed Ex Service - Honigman | $6,441.13 |
| Electronic Discovery - Honigman | $571,178.54 |
| Outside Document Production - Honigman | $3,103.26 |
| Other Document Production - Honigman | $16,048.10 |
| Public Access to Court Electronic Records - Honigman | $410.76 |
| Secretary Overtime Charges - Honigman | $28,502.73 |
| Telephone Charges - Honigman | $1,385.12 |
| Other Travel Expenses - Honigman | $50,133.09 |
| Federal Express Charges –DSH | $11,200.12 |
| Attorney Travel Charges- DSH | $123.44 |
| Other transcripts-DSH | $1,127.27 |
| Copies -DSH | $23,446.70 |
| Other Service Charges-DSH | $5,479.16 |
| Messenger and Mileage-DSH | $387.01 |
| Telephone Charges-DSH | $1,169.66 |
| PACER Charges-DSH | $57.50 |
| Pro Hac Fees-DSH | $450.00 |
| Westlaw Charges -DSH | $1,216.69 |
| Software and Media Charges-DSH | $8,589.28 |
| Journal Charges-DSH | $19.50 |
| **Grand Total (Honigman & DSH)** | **$842,701.27** [18] |

---

[16] All the Plaintiffs also sought a notice requirement for future acquisitions.  The Court did not provide this relief.  However, it was not a focus of the efforts of any of the Plaintiffs.

[17] Saint Alphonsus is not seeking to recover its expert witness costs, as nontaxable costs, though those costs represent a significant seven figure number.

SAINT ALPHONSUS' MOTION FOR ATTORNEYS' FEES-17

Each of the foregoing costs were reasonably and necessarily incurred during the course of this action.  See Ettinger Decl. ¶ 48; Duke Decl. ¶ 11.  The largest item relates to electronic discovery.  Although, under the most recent controlling authority, most categories of electronic discovery are not recoverable under 28 U.S.C. 1290 as a taxable cost, such costs can be reasonable and necessary litigation expenses and thus are recoverable where a statute authorizes a party to recover its reasonable costs.  *See Lockheed Martin Idaho Tech. Co. v. Lockheed Martin Advanced Environmental Systems, Inc.*, Case No. CV-98-316, 2006 WL 2095876 at \*2 (Winmill, J.) (awarding plaintiff $4.6 million in costs relating to the creation of litigation database, noting that, "the litigation database was necessary due to the extreme complexity of the case" and volume of documents to be reviewed and produced).

Electronic discovery was clearly a  necessary expense here.   St. Luke's, Saltzer and the third parties produced over 600,000 documents.   Saint Alphonsus produced over 230,000 documents.  Ettinger Decl. ¶ 41.  In order for Saint Alphonsus to timely and efficiently produce documents under the accelerated schedule in this case, it was necessary to store the documents electronically in a searchable format where they could then be reviewed and coded for responsiveness, confidentiality and privilege.  *Id.* ¶ 50.

Electronic discovery was also necessary to efficiently search and code (and later retrieve) documents produced by defendants and third parties on a basis such as responsiveness, importance, issue and witness.   This significantly cut down on lawyer time in preparing for

---

[18] Saint Alphonsus is providing as exhibits to David Ettinger's and Keely Duke's Declaration, detailed spreadsheets (but not the invoices themselves) that provide sufficient detail to assess the reasonableness of the expense.  See Ex. 12 and 13 to Ettinger Declaration and Exs. B and C to Duke Declaration.  However, invoices are available upon request.

depositions and trial.  *Id*. ¶ 50.  Additional information about the necessity and reasonableness of Saint Alphonsus' other non-taxable costs is provided in Mr. Ettinger's Decl. ¶ 50.

Saint Alphonsus' counsel endeavored, wherever feasible, to keep all these costs to a minimum. *Id*. ¶ 48.   It is the practice of lawyers in Boise to separately bill their clients for such litigation expenses.  See Duke Decl. ¶11; Westermeier Decl. ¶12.   These "reasonable" costs should be awarded to Saint Alphonsus.

## VII.    **CONCLUSION**

For the reasons stated above, and pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and the Idaho Competition Act, I.C. § 48-113, Saint Alphonsus should be awarded $7,342,456.50 for its reasonable attorney fees and an additional $842,701.27 for non-taxable costs itemized *supra*, for a total attorney fee and non-taxable cost award of **$8,185,157.77**.

DATED this 14th day of March, 2014.

DUKE SCANLAN & HALL, PLLC

By: /s/ Keely E. Duke
        Duke Scanlan & Hall, PLLC
        1087 W. River Street, Suite 300
        Boise, ID 83707
        Telephone (208) 342-3310
        ked@dukescanlan.com

        David A. Ettinger
        Lara Fetsco Phillip
        Honigman Miller Schwartz and Cohn LLP
        660 Woodward Avenue
        Detroit, MI  48226
        Telephone:  (313) 465-7368
        dettinger@honigman.com
        lara.phillip@honigman.com

        *Attorneys for Saint Alphonsus Medical*
        *Center-Nampa, Inc., Saint Alphonsus*
        *Health System, Inc., and Saint Alphonsus*
        *Regional Medical Center, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of March, 2014, I electronically filed the foregoing document with the U.S. District Court.  Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System.

Ben J Keith      bkeith@sidley.com, krockwell@sidley.com
Brett T DeLange      brett.delange@ag.idaho.gov, teresa.taylor@ag.idaho.gov
Brian K Julian      bjulian@ajhlaw.com, lgrantham@ajhlaw.com, pgrossman@ajhlaw.com
Bryan A Nickels      ban@dukescanlan.com, klb@dukescanlan.com, klm@dukescanlan.com, sls@dukescanlan.com
Carl J Withroe      carl.withroe@ag.idaho.gov, colleen.funk@ag.idaho.gov
Charles K Schafer      cschafer@sidley.com
Colleen D Zahn      colleen.zahn@ag.idaho.gov, reta.massano@ag.idaho.gov
Danica Noble      dnoble@ftc.gov
David A Ettinger      dettinger@honigman.com, nroberts@honigman.com, shakim@honigman.com
Douglas Eugene Litvack      dlitvack@ftc.gov, abeilein@ftc.gov
Eric J Wilson      ewilson@gklaw.com
Henry Chao-Lon Su      hsu@ftc.gov, lrine@ftc.gov, ssajewski@ftc.gov
J Walter Sinclair      JWSinclair@hollandhart.com njhammond@hollandhart.com
Jack R Bierig      jbierig@sidley.com
Keely E. Duke      ked@dukescanlan.com, klb@dukescanlan.com, sls@dukescanlan.com
Kevin J O'Connor      koconnor@gklaw.com
Kevin J Scanlan      kjs@dukescanlan.com, klb@dukescanlan.com, klm@dukescanlan.com
Lara Fetsco Phillip      lara.phillip@honigman.com
Matthew Paul Accornero      maccornero@ftc.gov
Michael James Perry      mperry@ftc.gov
Peter C Herrick      pherrick@ftc.gov
Portia L Rauer      plr@powerstolman.com, jsm@powerstolman.com
Raymond D Powers      rdp@powerstolman.com, crb@powerstolman.com, jls@powerstolman.com
Robert J Schroeder      rschroeder@ftc.gov
Scott D Stein      sstein@sidley.com, efilingnotice@sidley.com, jfitzpat@sidley.com, jfitzpatrick@sidley.com
Syrena Case Hargrove      Syrena.Hargrove@usdoj.gov, angela.nyland@usdoj.gov, becky.early@usdoj.gov, pamela.bearg@usdoj.gov, USAID.ECFNOTICE@USDOJ.GOV
Tacy F Flint      tflint@sidley.com
Wendy K Arends      warends@gklaw.com, jschwartz@gklaw.com, swilson@gklaw.com
Thomas Greene      tgreene2@ftc.gov

/s/ Keely E. Duke
Keely E. Duke

SAINT ALPHONSUS' MOTION FOR ATTORNEYS' FEES-20