Keely E. Duke
ISB 6044; ked@dukescanlan.com
Kevin J. Scanlan
ISB 5521; kjs@dukesanlan.com
Duke Scanlan & Hall, PLLC
1087 W. River Street, Suite 300
Boise, ID 83707
Telephone: (208) 342-3310
Facsimile:(208) 342-3299

David Ettinger
dettinger@honigman.com
Lara Fetsco Phillip
lara.phillip@honigman.com
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone (313) 465-7368
Facsimile (313) 465-7397

*Attorneys for Saint Alphonsus Medical Center-Nampa, Inc., Saint Alphonsus Health System, Inc., and Saint Alphonsus Regional Medical Center, Inc.*

UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC. <br><br> Plaintiffs, <br> v. <br><br> ST. LUKE'S HEALTH SYSTEM, LTD. <br><br> Defendant. | Case No. 1:12-CV-00560-REB <br><br> **DECLARATION OF STEPHANIE C. WESTERMEIER** |

STATE OF IDAHO      )
                    ) ss.
County of Ada       )

STEPHANIE C. WESTERMEIER states as follows:

1. I am the General Counsel of Saint Alphonsus Health System, Inc., which includes Saint Alphonsus Medical Center - Nampa, Inc. and Saint Alphonsus Regional Medical Center, Inc. in Boise ("Saint Alphonsus"). I have direct responsibility for overseeing Saint Alphonsus' participation in the above-captioned litigation. This oversight includes assignment of and

14368525.11

supervision of Saint Alphonsus' outside counsel in this case, who are of the firms Honigman, Miller, Schwartz & Cohn, LLP ("Honigman") and Duke Scanlan & Hall PLLC ("Duke Scanlan"), respectively.

2. I have been practicing law in Idaho since 1991. I established the in-house legal Department at Saint Alphonsus Regional Medical Center in 2001 and since then have served as General Counsel of Saint Alphonsus and Saint Alphonsus Health System. Prior to 2001, I was a partner on the managing and hiring committees at the Boise law firm Givens Pursley, LLP, where I practiced primarily in the areas of health law, employment law and litigation.

3. During my time in private practice and in-house, I have been involved as counsel in, have retained counsel for, and have overseen, a variety of different types of litigation, including complex litigation. I have also attended numerous health law conferences, including those presented by the American Health Lawyers Association and other organizations. I receive and read numerous publications and information related to health law developments, including health antitrust law. I am knowledgeable regarding the law firms in the United States whose lawyers practice health law and health antitrust law. I am also very familiar with the firms in Boise who have attorneys who practice in aspects of health law and am familiar with law firms in Boise generally.

4. I chose Duke Scanlan as local counsel for this case because I believed that for this case, Saint Alphonsus required local counsel who was well experienced in working with and litigating in the Idaho Federal District Court. I also chose them because I value their professional judgment, legal ethics, outstanding legal skills, candor and ability to interact professionally with courts and counsel, which I have had the opportunity to evaluate based on my experience in working with Keely Duke and Kevin Scanlan over many years. In addition, Ms. Duke is particularly skilled in presentation of electronic evidence in litigation. Ms. Duke in

14368525.11

fact was willing and able to multi-task during trial and to perform this presentation of evidence, which enabled us to avoid the added cost of having a paralegal or a retained IT firm present at Court.

5. I chose David Ettinger and Honigman to advise Saint Alphonsus and lead this case because of David's unique expertise and experience in health antitrust law. I believe that I needed to retain such experienced health antitrust counsel in this case to fulfill my obligations as General Counsel, given the legal complexities and the critical importance of the case to Saint Alphonsus. The acquisition of Saltzer Medical Group by St. Luke's posed the risk of serious harm to Saint Alphonsus in Nampa as well as Saint Alphonsus' overall competitive position. We needed to have counsel with the depth and breadth of both antitrust and healthcare antitrust law to competently address and litigate these issues. There were no attorneys in Idaho with such expertise. In my opinion, this is not the type of case where the law and the associated complexities of health care antitrust economics are easily learned or assimilated. In addition, I believe it saved Saint Alphonsus significant time and expense to hire David Ettinger for this case as he has worked with Saint Alphonsus in the past on issues that gave him a base of knowledge on which to build, involving the relevant markets.

6. My approach in hiring antitrust counsel for this case was consistent with my approach in other health antitrust matters. I have retained at least two other antitrust attorneys from outside of Idaho (located in Washington, D.C. and Seattle) to assist with issues in the past seven years. In these matters, I concluded that there were no attorneys in Idaho with the specialized knowledge required to address the health antitrust issues.

7. In general, my goal in managing this complex litigation was to ensure that the case was presented to the Court as well as possible. In addition, I wanted to try to minimize the

cost associated with this litigation by ensuring that matters were handled as efficiently as possible. Honigman and Duke Scanlan met my expectations in both areas.

8. I am very familiar with the hourly rates charged by firms in Boise, both through my private practice and my retention of law firms on behalf of Saint Alphonsus. The hourly rates we paid Duke Scanlan in this case (from $120 to $250 per hour) are at or well below the rates charged by litigators in Boise in my experience.

9. I believe the work of Honigman and Duke Scanlan was exemplary. While the overall fees associated with this matter are quite large, legal fees and costs have been reasonable in consideration of the size, complexity and accelerated pace of this antitrust case.

10. Given the complexity, size and importance of the case, my oversight of this matter was even more significant and direct than with other types of litigation. My oversight included reviewing the status of the case on a daily basis, typically speaking with Mr. Ettinger and/or Ms. Duke and exchanging e-mail communication with them concerning all aspects of the case that I could learn about given the Protective Order and confidentiality constraints in place, reviewing pleadings and other filings and documents associated with this case, attending as many of the depositions of witnesses as I was permitted to attend consistent with the Protective Order and attending all of the depositions and the majority of the deposition preparation sessions with Saint Alphonsus' witnesses.

11. I personally performed certain work which is normally performed by an outside litigator and for which Saint Alphonsus is not seeking reimbursement. This generally involved work in non-antitrust areas where I have particular expertise or knowledge. The specific work I did included research, drafting or providing input into portions of briefs relating to non-antitrust issues, research and consultation on health care law (such as the laws impacting hospital relationships with physicians and health care operational issues), assisting with drafting of

questions for certain depositions, and additional work regarding Saint Alphonsus' witnesses and deponents.

12. I agreed to pay Honigman's and Duke Scanlan's fees at the hourly rates they have charged for the hours incurred, plus costs advanced. In addition to Duke Scanlan and Honigman, in order to keep costs down, I retained lawyers at the Gneosis firm, to review documents at an agreed-upon rate. I have reviewed invoices submitted by Duke Scanlan and Honigman and approved the invoices for payment. My review was aided by our rules for legal invoices of this kind, which require detailed, task-based billing indicating the units of time spent completing the work described. Saint Alphonsus separately paid for litigation costs including airfare, hotel and other travel expenses; computer research; overnight courier service; document production and copying; necessary secretarial overtime; telephone charges and electronic discovery costs. In my experience other lawyers in Boise routinely separately charge clients for some or all of these expenses.

13. I swear under penalty of perjury that the foregoing is true and correct and based on my personal knowledge.

This 14th day of March, 2014.

/Stephanie C. Westermeier