UNITED STATES DISTRICT COURT
IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER-NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC. | Case No. 1:12-cv-00560-BLW (Lead Case) |

    Plaintiffs,
  v.

ST. LUKE'S HEALTH SYSTEM, LTD., and
ST. LUKE'S REGIONAL MEDICAL CENTER
LTD.,

    Defendants.

_____

FEDERAL TRADE COMMISSION; STATE OF
IDAHO            Case No. 1:13-cv-00116-BLW

    Plaintiffs,

v.

ST. LUKE'S HEALTH SYSTEM, LTD.;
SALTZER MEDICAL GROUP, P.A.

    Defendants.

**ORDER TO MAINTAIN ASSETS**
**<u>AND APPOINTING A MONITOR AND A DIVESTITURE TRUSTEE</u>**

**<u>PRELIMINARY STATEMENT</u>**

*WHEREAS,* the Court is entering this Order, with the parties' agreement, to fully achieve

the Court's February 28, 2014, Judgment ("Judgment") enjoining St. Luke's acquisition of

Saltzer and requiring St. Luke's to "divest itself of Saltzer's physicians and assets and take any further action needed to unwind the Acquisition."

*WHEREAS,* the Court finds it appropriate to appoint a Monitor to monitor the asset maintenance requirements of this Order pending the divestiture of the Saltzer Assets and Business.

*WHEREAS,* the Court finds it appropriate to appoint a Trustee to accomplish the divestiture of the Saltzer Assets and Business as provided herein, so that the Saltzer Assets and Business will be operated as a viable, independent medical practice that will restore competition in the market for adult primary care physician services sold to commercially insured patients in Nampa, Idaho.

*WHEREAS,* the Court retains the authority to oversee and approve all aspects of the implementation of this Order including, but not limited to, hearing any issues raised by the Plaintiffs or Defendants concerning the Monitor, the Trustee, the divestiture process, the asset maintenance, and retaining the ultimate authority to interpret the  Judgment and approve the divestiture, in whatever form, as proposed by the Trustee.

*WHEREAS*, the purpose of the Judgment and this Order is to remedy the likely lessening of competition resulting from St. Luke's acquisition of Saltzer, as found by this Court, and to restore the competitive intensity of Saltzer as a viable, independent competitor in the market for adult primary care physician services sold to commercially insured patients in Nampa, Idaho.

*WHEREAS,* this Order shall be interpreted broadly so as to fully achieve the requirements and purpose of the Judgment.

*THEREFORE,* in light of the stipulation of the parties and the Court otherwise being advised in the premises, and in consideration of the Court's review, it is hereby ORDERED:

# I.
## ASSET MAINTENANCE

Until the divestiture is completed as required by the Judgment, and pursuant to this

Order, and any further orders of the Court:

A.   St. Luke's and Saltzer shall fully and completely maintain the economic viability and

marketability of the Saltzer Assets and Business, and SIHP.  Among other things, and

without limitation, St. Luke's and Saltzer shall:

1.   Maintain all clinical services and Saltzer Physicians, Orthopedic Surgeons, and

Designated Employees in their current employment status and location;

*PROVIDED, HOWEVER,* that changes in personnel status, positions, and

location, or new agreements with such personnel, and the Saltzer Assets and

Business, in general, may be approved by the Monitor and the Government

Plaintiffs, as requested by Defendants;

2.   Not discourage any Saltzer Physician, Orthopedic Surgeon, or Designated

Employee from continuing at Saltzer, or encourage them to seek employment at

St. Luke's;

3.   Provide continuing support for all service lines in which such personnel in

Paragraph I.A.2 were engaged;

4.   Not advocate or predict a Saltzer transition to a primary care focused model (and

shall inform Saltzer personnel that any previous plans to transition to a primary

care focused model are no longer in effect);

5.   Not eliminate, transfer, consolidate, or reduce clinical services, equipment or

facilities, and shall, without limitation, maintain office space, and imaging

services and any other assets or businesses transferred or controlled by

3

Defendants since the Acquisition Date;  *PROVIDED, HOWEVER,* that changes

in personnel status, positions, and location, and the Saltzer Assets and Business,

in general, may be approved by the Monitor and the Government Plaintiffs, as

requested by Defendants; and

6.     Allow SIHP and Saltzer to operate separately, apart, and independently of St.

Luke's other businesses and assets, and shall vest SIHP and Saltzer with all

rights, powers, and authority necessary to conduct business in a manner

consistent with this Order.  *PROVIDED, HOWEVER,* that St. Luke's shall be

allowed to, and may, pursuant to this Order, be required to, provide Maintenance

Services to SIHP and Saltzer.

B.     Defendants shall not take any actions that might risk the loss of competitive potential,

viability or marketability of the Saltzer Assets and Business, or SIHP, and shall take all

actions necessary or appropriate to prevent the destruction, removal, wasting,

deterioration, or impairment of any of the assets, relationships or goodwill related to the

Saltzer Assets and Business and SIHP.  In particular, and without limitation, St. Luke's

shall provide sufficient financial assistance to maintain the competitiveness and viability

of Saltzer Assets and Business and SIHP as reasonably determined by the Monitor

subject to approval by the Court.

C.     St. Luke's, and Saltzer shall not:

1.     Sell, transfer, encumber, or otherwise impair the Saltzer Assets and Business or

SIHP (other than in the manner prescribed by an order of this Court) nor take any

action that lessens the full economic viability, marketability, or competitiveness

of the Saltzer Assets and Business or SIHP.  *PROVIDED, HOWEVER,* Saltzer may add Saltzer Assets and Business to SIHP after the date of this Order;

2.     Reduce the level of any financial assistance that has been provided to the Saltzer Assets and Business and SIHP since the Acquisition;

3.     Terminate, or cause or allow termination of any contract between any Payor and Saltzer, or St. Luke's, involving any Saltzer Medical Professional or Saltzer Physician, *PROVIDED, HOWEVER,* SIHP or Saltzer may make new contracts between Payors and SIHP or Saltzer on a basis that is separate and independent from St. Luke's including, but not limited to, contracts that allow non-exclusive participation in St. Luke's network, if approved by the Monitor in consultation with the Government Plaintiffs;

4.     Enter any contract that is exclusive or that otherwise irrevocably would bind any Saltzer Asset or Business beyond the time when the divestiture occurs, except with the approval of the Monitor in consultation with the Government Plaintiffs; or

5.     Take any action that might create a material change in the operations of any Saltzer Asset or Business, or of SIHP, except with the approval of the Monitor in consultation with the Government Plaintiffs.

*PROVIDED, HOWEVER,* that, subject to III.B.5. and III.B.6., nothing in this Order shall (i) require St. Luke's to terminate any Saltzer Physician Individual Contract, (ii) prohibit St. Luke's from extending any Saltzer Physician Individual Contract so long as St. Luke's or Saltzer give prior notice to the Monitor and Trustee of such extensions, or (iii) require St. Lukes' to terminate any Current Recruitment Agreement.

D.      Except as otherwise limited by this Order, and under the review of the Monitor, until the divestiture approved by the Court is complete, Saltzer may operate as an independent medical group with control over the Saltzer Assets and Business, and St. Luke's shall maintain the economic viability and marketability of the Saltzer Assets and Business.

## II.
## MONITOR AND TRUSTEE APPOINTMENT

A.      Pursuant to the agreement between St. Luke's and  R. Shermer & Company, R. Shermer & Company, with Mr. Richard Shermer as primary contact, is appointed as the Asset Maintenance Monitor ("Monitor") to monitor the asset maintenance requirements of this Order.

B.      Pursuant to the agreement between St. Luke's and Cain Brothers, Cain Brothers, with Mr. James Moloney as primary contact, is appointed as Divestiture Trustee ("Trustee") and to effectuate the divestiture, as promptly as reasonably possible, of the Saltzer Assets and Business and to make such other arrangements as appropriate, in compliance with the terms of this Order, to achieve the requirements and purpose of the Judgment and this Order.

C.      The Monitor and the Trustee shall perform their duties according to the terms of this Order and under the day-to-day direction of the Government Plaintiffs, as provided herein and pursuant to the agreement entered between the Monitor and Trustee and St. Luke's.  St. Luke's and Saltzer shall transfer and provide to the Monitor and the Trustee all rights and powers reasonably necessary or desirable to permit the Monitor and Trustee to effect the powers, duties, authority, and responsibilities enumerated herein.

D.      The Monitor and the Trustee:

1.     Shall work together, communicate regularly, and share information as needed, to minimize duplicative gathering of information from St. Luke's, Saltzer, any Saltzer Physician, Saltzer Medical Professional, Designated Employee, or Orthopedic Surgeon.

2.     Shall, subject to any demonstrated legally recognized privilege and as necessary or desirable to perform their duties hereunder, have full and complete access to the personnel, books, records, and facilities of St. Luke's, related to the Saltzer Assets and Business, and of Saltzer, and to any other relevant information, as the Monitor and the Trustee may request.  St. Luke's, and Saltzer shall develop such financial or other information as the Monitor and the Trustee may request and shall fully, completely and promptly cooperate with the Monitor and the Trustee. The Monitor and the Trustee and/or Government Plaintiffs may raise with the Court any issues relating to any failure of or delay in such cooperation for an expedited resolution by the Court.

3.     Shall serve, without bond or other security, at the cost and expense of St. Luke's, with the Monitor's and the Trustee's fees subject to final approval by the Court. The Monitor and the Trustee shall have the authority to employ, in consultation with the Government Plaintiffs and with notification to Defendants, at the cost and expense of St. Luke's, such consultants, accountants, attorneys, investment bankers, business brokers, appraisers, and other representatives and assistants as are necessary to carry out the Monitor's and the Trustee's duties and responsibilities.  The Government Plaintiffs shall review the Monitor's and the Trustee's proposed expenses for persons retained by the Monitor and the Trustee,

as necessary given the obligations of the Monitor and the Trustee in this Order. The Trustee shall serve until completion of the required divestiture and the Monitor shall serve until the completion of any transitional agreements.  The Trustee shall account for all monies derived from the divestiture and all expenses incurred by the Trustee or at the direction of the Trustee.  After approval by the Government Plaintiffs, and final approval by the Court, of the account of the Monitor and the Trustee, including fees for the Monitor's and the Trustee's services, all remaining monies shall be paid at the direction of St. Luke's, and the Monitor's and the Trustee's powers shall be terminated.

4.      Shall have no obligation or authority to operate the Saltzer Assets and Business or SIHP;

5.      Shall report in writing to the parties and the Court, subject to the provisions of any protective order issued in this matter, every thirty (30) days, concerning among other things, the Trustee's efforts to accomplish the divestiture, and St. Luke's and Saltzer's compliance with the Order.  Additionally, the Monitor and the Trustee shall, at any other times the Monitor or the Trustee deem appropriate, report to the Government Plaintiffs if St. Luke's or Saltzer is or may be violating any provision of the Order including, but not limited to, the asset maintenance provisions in Paragraph I of this Order.   Elements of such reports may be submitted under seal and as Attorneys' Eyes Only pursuant to the terms of the Protective Order.  The Court may, in response to such reports, provide such further direction to the Monitor and the Trustee as it deems appropriate;

6.      Shall sign Exhibit A to the Protective Order entered by the Court, and any confidentiality agreement consistent with the Protective Order as deemed necessary by the parties, and each of the Monitor's and the Trustee's consultants, accountants, attorneys and other representatives and assistants shall sign Exhibit A to the Protective Order entered by the Court, and any confidentiality agreement consistent with the Protective Order as deemed necessary by the parties.  St. Luke's and Saltzer may require the Monitor and the Trustee and each of the Monitor's and the Trustee's consultants, accountants, attorneys, and other representatives and assistants to sign a confidentiality agreement acceptable to the Government Plaintiffs in their sole discretion; *PROVIDED, HOWEVER*, that such agreements shall not restrict the Monitor and the Trustee from providing any information to the Court and the parties consistent with the terms of the Protective Order or restrict the Trustee from disclosing information to third parties who may be interested in acquiring or investing in the Saltzer Assets and Business, subject to those third parties signing appropriate confidentiality agreements;

7.      Shall sign a confidentiality agreement consistent with the Protective Order related to the Government Plaintiffs' materials and information received in connection with the performance of the Monitor's and the Trustee's duties, and each of the Monitor's and the Trustee's consultants, accountants, attorneys and other representatives and assistants shall sign a confidentiality agreement consistent with the Protective Order related to the Government Plaintiffs' materials and information received in connection with the performance of the Monitor's and the Trustee's duties;

8.      May communicate *ex parte* with the Court, the Government Plaintiffs, St. Luke's, and Saltzer at their discretion, without providing notice to other parties, as necessary in order to fulfill their duties pursuant to this Order. *PROVIDED, HOWEVER,* that the Monitor and the Trustee are not prohibited from disclosing the *ex parte* conversations with the Defendants to the Government Plaintiffs or the Court. *PROVIDED FURTHER, HOWEVER,* that the Monitor and the Trustee shall not disclose to the Defendants or non-Government Plaintiffs *ex parte* conversations with the Government Plaintiffs, unless authorized to do so by the Government Plaintiffs.

E.      The Monitor's powers, duties, authority, and responsibilities shall include the following, without limitation:

1.      The Monitor shall work with all diligence, acting in a fiduciary capacity for the benefit of the Government Plaintiffs, but subject to the direction of the Court, to oversee the maintenance of the of the economic viability and marketability of the Saltzer Assets and Business, and SIHP assets as required in Paragraph I of this Order.

2.      Among other things, the Monitor shall assure that (i) SIHP and the Saltzer Assets and Business are not sold, wasted, encumbered, or service lines discontinued; (ii) Saltzer and SIHP personnel are not released, discouraged in any way from continued work at Saltzer, or encouraged in any way to obtain employment at St. Luke's (except with the approval of the Monitor and the Trustee, in consultation with Government Plaintiffs); (iii) Saltzer does not take any steps to transition to a primary care focused model or any business model different from its methods of

operation as of the Acquisition Date; and (iv) operations are not modified or terminated, unless otherwise allowed pursuant to this Order, pending completion of an approved divestiture.

F.    The Trustee's powers, duties, authority, and responsibilities shall include the following, without limitation:

1.    Subject to the approval of the Government Plaintiffs and final approval of the Court, the Trustee shall have the exclusive power and authority to assign, grant, license, divest, transfer, deliver, or otherwise convey the Saltzer Assets and Business, including without limitation any tangible or intangible assets originally possessed by Saltzer prior to acquisition by St. Luke's and to establish any necessary or appropriate Maintenance Services between St. Luke's and Saltzer and any entity that acquires the Saltzer Assets and Business;

2.    The Trustee shall be an independent contractor with no employee-employer relationship with the parties or the Court.

3.    The Trustee shall use reasonable judgment, and work with all reasonable diligence and speed to accomplish the divestiture.

4.    The Trustee shall have not more than twelve (12) months (subject to the extension provided below) from the date of this Order to accomplish the divestiture.  The Trustee shall consult with the Saltzer Physicians (without interference from St. Luke's and Saltzer), and review and consider their input regarding the specific provisions of any proposed agreement to divest the Saltzer Assets and Business relating to individual Physician's scope of service, work site, compensation, work and call schedule, and the term and termination of professional services, before

such agreement is submitted to the Court.  Any divestiture shall be made only to an Acquirer acceptable to the Government Plaintiffs in their sole discretion, and subject to the final approval of the Court, and only in a manner acceptable to the Government Plaintiffs in their sole discretion, and subject to the final approval of the Court.  If, however, at the end of the twelve (12) month period, the Trustee has submitted a plan of divestiture or believes that the divestiture can be achieved within a reasonable additional time, the divestiture period may be extended by the Court.  *PROVIDED, HOWEVER*, that if the Trustee does not accomplish the divestiture, the Trustee shall recommend to the parties and the Court whether accomplishment of the Judgment and this Order may be achieved in some alternative manner, consistent with the Court's Judgment and with the purposes of the Judgment and this Order.  Until further order of the Court, the obligations of the Judgment and this Order shall remain in effect;

5.      Among other things, the Trustee shall have the authority to:

a.      gather all information – public and non-public – from St. Luke's, related to the Saltzer Assets and Business, and from Saltzer, necessary or appropriate to prepare marketing materials for a possible sale of the Saltzer Assets and Business to a third party or for other investment or support by a third party with the purpose of fully divesting as required by the Judgment and this Order;

b.      have access to, and discussions with, individual Designated Employees, Orthopedic Surgeons, and Saltzer Physicians (outside the presence of and without interference from St. Luke's or Saltzer, their management,

        directors, or executive officers) as the Trustee deems appropriate, in order to review requests or issues reasonably raised by the parties, including assessing expressions of interests, concerns, and needs of Saltzer Physicians and staff relating to the divestiture;

c.      prepare marketing materials related to the Saltzer Assets and Business, including, but not limited to, current and historical information and data, and other arrangements between Defendants;

d.      (i) in the first instance, conduct a robust marketing and search for interested Acquirers or other investment or support by third parties for the Saltzer Assets and Business, and assess potential Acquirers' and investors' ability to compete independently from St. Luke's, and (ii) in the event such Acquirers or investors cannot be found, explore a spin-off of the Saltzer Assets and Business, and assess Saltzer's ability to compete independently from St. Luke's;

e.      obtain non-disclosure agreements from interested third parties in order to conduct negotiations and allow for due diligence as appropriate;

f.      in conjunction with transaction counsel, selected by the Trustee and approved by the Government Plaintiffs in accordance with Paragraph II.D.3. of this Order, negotiate all agreements necessary to effectuate (i) the divestiture of Saltzer's Assets and Business, (ii) the transfer of the practices, agreements, professional relationships and business of the Saltzer Physicians, and all tangible and intangible assets related thereto, and (iii) the employment of  Designated Employees, and to take any

further action, and enter additional agreements, including, but not limited to, the establishment of any transitional services agreements or Maintenance Services between an Acquirer and St. Luke's, as needed to fully unwind the acquisition of Saltzer by St. Luke's;

g.    consult with St. Luke's, as the Trustee, in consultation with the Government Plaintiffs, deems appropriate regarding the progress of negotiations and the terms of any proposed agreements;

h.    consult with Saltzer and the Saltzer Physicians, as the Trustee, in consultation with the Government Plaintiffs, deems appropriate or required under this Order regarding the progress of negotiations and the terms of any proposed agreements;

6.    The Trustee shall use commercially reasonable best efforts to negotiate the most favorable price and terms available in each divestiture contract that is submitted to the Court and to the Government Plaintiffs, subject to St. Luke's absolute and unconditional obligation to divest expeditiously and at no minimum price. *PROVIDED, HOWEVER,* that the Trustee's priority in identification and selection of a purchaser and negotiation of terms shall be on the most timely divestiture to the party most likely to maintain Saltzer as a viable, independent, competitive entity, and not on any particular price to be paid for the assets. Before the divestiture contract is signed by the Trustee and the potential Acquirer, and subject to Paragraph II.J. of the Order, the Trustee shall allow St. Luke's and Saltzer a five (5) day period to comment on such divestiture contract. Such comments shall not be considered a right to reject or veto the divestiture contract

in whole or in part.  The divestiture shall be made in the manner and to an
Acquirer as required by this Order.  After completion of the negotiated divestiture
contract or contracts for the divestiture, or at any time that the Trustee deems
appropriate, St. Luke's and Saltzer will be given a copy of the divestiture contract
or contracts for information.

G.      St. Luke's shall indemnify the Monitor and the Trustee and hold the Monitor and the
Trustee harmless against any losses, claims, damages, liabilities, or expenses arising out
of, or in connection with, any claim concerning or related to the performance of the
Monitor's and the Trustee's duties (including any claim initiated by St. Luke's),
including all reasonable fees of counsel and other expenses incurred in connection with
the preparation for, or defense of, any claim, whether or not resulting in any liability
except to the extent that such losses, claims, damages, liabilities, or expenses result from
gross negligence, willful or wanton acts, or bad faith by the Monitor or the Trustee, as
determined by the Court.  For purposes of this Order, the terms "Monitor" and "Trustee"
shall include all persons retained by the Monitor and the Trustee pursuant to this Order.
St. Luke's may discharge, in whole or in part, the indemnification obligations of this
paragraph for either the Monitor or Trustee, or both, through an insurance policy, so long
as the Monitor or Trustee, respectively, and the Government Plaintiffs have agreed to the
terms of such insurance policy as part of the agreements with the Monitor and Trustee in
Paragraphs II.A. and II.B. of this Order.  *PROVIDED, HOWEVER*, that any gaps in such
insurance shall be covered by St. Luke's.

H.      Saltzer shall indemnify the Monitor and the Trustee and hold the Monitor and the Trustee
harmless against any losses, claims, damages, liability or expenses arising out of, or in

15

connection with any claim brought by Saltzer, or by any Saltzer Physician, Saltzer

Medical Professional, or Designated Employee concerning or related to the performance

of the Monitor's or the Trustee's duties, whether or not resulting in any liability, except

to the extent that such losses, claims, damages, liabilities or expense result from gross

negligence, willful or wanton acts, or bad faith by the Monitor or the Trustee as

determined by the Court.  For purposes of this Order, the terms "Monitor" and "Trustee"

shall include all persons retained by the Monitor and the Trustee pursuant to this Order.

Saltzer may discharge, in whole or in part, the indemnification obligations of this

paragraph for either the Monitor or Trustee, or both, through an insurance policy, so long

as the Monitor or Trustee, respectively, and the Government Plaintiffs have agreed to the

terms of such insurance policy as part of the agreements with the Monitor and Trustee in

Paragraphs II.A. and II.B. of this Order.  *PROVIDED, HOWEVER*, that any gaps in such

insurance shall be covered by Saltzer.

I.    If the Government Plaintiffs determine that either the Monitor or the Trustee has ceased

to act or failed to act diligently, they may recommend that the Court appoint a substitute

Monitor or Trustee, to be nominated by the Government Plaintiffs.  *PROVIDED,*

*HOWEVER,* that the Court, on its own motion, may make the determination that the

Monitor or the Trustee has ceased to act or failed to act diligently.  In selecting a

substitute Monitor or Trustee the Government Plaintiffs shall consult with the

Defendants.  Defendants shall notify Government Plaintiffs in writing concerning any

objections about the substitute Monitor's or Trustee's qualifications or potential conflicts

of interest within five (5) days of notification by Government Plaintiffs of the proposed

substitute Monitor or Trustee.  *PROVIDED, HOWEVER*, the Defendants shall not have

any right to approve or veto any selection by the Government Plaintiffs.  The terms of the

Order shall fully apply to such Monitor or Trustee, as appropriate.  The Trustee shall be a

person with experience and expertise in acquisitions and divestitures in the healthcare

field.  Within ten (10) days of appointment, St. Luke's shall enter an agreement with the

substitute Monitor or substitute Trustee, subject to approval by the Government Plaintiffs

in their sole discretion, that fully empowers the substitute Monitor or substitute Trustee to

perform his or her duties pursuant to this Order.

J.     St. Luke's, and Saltzer shall take no action to interfere with or impede the Trustee's

accomplishment of the divestiture or with the Monitor monitoring the asset maintenance

requirements.  St. Luke's and Saltzer shall not (i) instruct or otherwise direct the Monitor

or the Trustee concerning the performance of their duties under this Order, and under the

Monitor's agreement and the Trustee's agreement with St. Luke's, or (ii) instruct, direct,

discourage or otherwise attempt to influence the Saltzer Physicians, the Orthopedic

Surgeons, and the Designated Employees in cooperating with the Monitor and the

Trustee.  *PROVIDED, HOWEVER*, Defendants may provide their views on any issue

arising under this Order directly to the Monitor and the Trustee so long as they do not

interfere with the Monitor's duties and the Trustee's efforts to divest.  Any delays in

divestiture caused by St. Luke's or Saltzer shall extend the time for divestiture in an

amount equal to the delay, as determined by the Court.  *PROVIDED FURTHER,*

*HOWEVER*, that the Saltzer Physicians (without interference from St. Luke's and

Saltzer) shall have the right to review and provide input to the Trustee regarding the

specific provisions of any proposed agreement to divest the Saltzer Assets and Business

relating to individual Physician's scope of service, work site, compensation, work and

call schedule, and the term and termination of professional services, before such agreement is submitted to the Court; and the Saltzer Physicians may discuss issues, including any proposed agreement relating to these terms, among themselves and as a group (so long as St. Luke's and Saltzer do not interfere with or direct such discussions). If any individual Saltzer Physician decides not to enter any agreement regarding these terms that is to be submitted to the Court as part of any proposed divestiture, such Physician may exercise such rights as the Physician has under any contractual arrangement that Physician has with Saltzer.

K.      The Court may, on its own initiative or at the request of any Party or the Monitor or the Trustee, issue such additional orders or directions as may be necessary or appropriate to accomplish the required divestiture and to assure Defendants' compliance with the obligations of the Judgment and of this Order.  *PROVIDED, HOWEVER,* that nothing in this Order prohibits Defendants from seeking additional interpretations, or directions from the Court relating to the Monitor, the Trustee, the Monitor's or Trustee's actions or process, or any other issue related to this Order or any order of the Court in this matter. Moreover, all parties reserve the right to apply to the Court for an order modifying or amending the terms of this Order, either upon consent of the other Parties or upon a showing of good cause and other appropriate showing under the particular circumstances.

## III.
## <u>SALTZER PERSONNEL</u>

A.      Within five (5) days of the date this Order is entered, St. Luke's shall send a communication, in the form of attached Exhibit A, to each Designated Employee, Orthopedic Surgeon, and Saltzer Physician notifying them that (i) St. Luke's and Saltzer

will not take any action to restrict their discussions with and employment or affiliation by the Acquirer, (ii) St. Luke's and Saltzer will encourage them to remain with Saltzer pending any acquisition and will not change any employment or affiliation arrangement pending completion of the divestiture, and (iii) any previously mentioned plans toward transition to a primary care focused model are no longer in effect.

B.      Pending completion of the divestiture, St. Luke's and Saltzer:

1.      Shall provide a reasonable opportunity in advance of the divestiture, as deemed appropriate by the Trustee considering the status of any negotiations and the level of interest of the proposed Acquirer, and for sixty (60) days after the divestiture, for any interested Acquirer to meet personally, and outside of the presence or hearing of any employee or agent of St. Luke's or Saltzer, or the management of either, with any or all of the Designated Employees, Orthopedic Surgeons and Saltzer Physicians, and to make offers of employment to, or other affiliation with, any or all of the Designated Employees, Orthopedic Surgeons or Saltzer Physicians;

2.      Shall not discourage any such employee or physician from participating in such interviews, or interfere in negotiations between each Designated Employee, Orthopedic Surgeon or Saltzer Physician and the Acquirer;

3.      Shall not prevent, prohibit or restrict or threaten to prevent, prohibit or restrict, or directly or indirectly attempt to dissuade, the Designated Employee, Orthopedic Surgeons, or the Saltzer Physicians from accepting offers of employment or other affiliation with the Acquirer, and shall not offer any incentive to the Designated Employee or the Saltzer Physicians or Orthopedic Surgeons to decline

employment or affiliation with the Acquirer or make any counteroffer to any Designated Employee or Saltzer Physician or Orthopedic Surgeon who has an outstanding offer of employment or affiliation, or who has accepted an offer of employment or affiliation, from an acquire;

4.      Shall cooperate with the Acquirer in effecting transfer of the Designated Employee, Orthopedic Surgeons, or Saltzer Physician to the employ of, or affiliation with the Acquirer, if the Designated Employee, Orthopedic Surgeon, or Saltzer Physician accepts such offer of employment from, or affiliation with, the Acquirer;

5.      Shall, at the request of the Acquirer, in connection with the negotiation of the divestiture contract, and without any impact on compensation or benefits:

   a.      release any Designated Employee, Orthopedic Surgeon, or Saltzer Physician from any agreement including, but not limited to a Medicare Shared Savings Plan, or

   b.      waive or eliminate any contractual provisions or other restrictions including, but not limited to non-compete or exclusivity provisions,

that either (i) would otherwise prevent the Designated Employee, Orthopedic Surgeon, or Saltzer Physician from being employed by, or affiliated with, the Acquirer, or (ii) would be an impediment for the Acquirer to acquire the Saltzer Assets and Business.

6.      Shall eliminate (without any impact on compensation or benefits) any confidentiality or other restrictions that would prevent the Designated Employee, Orthopedic Surgeon, or Saltzer Physician who accepts employment or affiliation

with the Acquirer from using or transferring to the Acquirer any information or patient relationships related to his or her position with the Acquirer and shall provide all such physicians with complete patient contact information in a useable format along with patient records when requested by the patient;

7.      Shall inform all Designated Employees, Orthopedic Surgeon, and Saltzer Physicians that such provisions will be eliminated upon request;

8.      Shall pay, for the benefit of any Designated Employee, Orthopedic Surgeon, and Saltzer Physician who accepts employment or affiliation with the Acquirer, all benefits offered in the ordinary course of business, including regularly scheduled or merit raises and bonuses, and regularly scheduled vesting of all pension benefits and other accrued benefits.

C.      For a period of five (5) years following the divestiture, St. Luke's shall not, without the prior approval of the Government Plaintiffs, directly or indirectly employ or otherwise enter into any professional services agreement, or agreement involving an exclusive relationship, with any Saltzer Adult Primary Care Physician.   *PROVIDED, HOWEVER,* that, if acceptable to the Acquirer, St. Luke's may continue (i) the Saltzer Physician Individual Contracts with Saltzer Adult Primary Care Physicians, (ii) the St. Luke's and Saltzer recruitment agreements, and (iii) the contract with a Saltzer Physician to practice at St. Luke's Ear, Nose, Throat facility in Eastern Oregon.

D.      For a period of five (5) years following the divestiture, St. Luke's shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce any Designated Employee who is employed by the Acquirer to terminate his or her employment relationship with the Acquirer, or any Physician who is employed or otherwise affiliated with the Acquirer to

terminate his or her position or relationship with the Acquirer, unless that relationship has already been terminated by the Acquirer or the Physician. *PROVIDED, HOWEVER*, that this Paragraph III.D. shall not prohibit St. Luke's from advertising for employees or Physicians in newspapers, trade publications, or other media, including publicly accessible employment portals or websites, so long as these actions are not targeted specifically at any employee or Physician employed by the Acquirer. *FURTHER PROVIDED, HOWEVER,* that this Paragraph III.D. shall not prohibit St. Luke's from hiring or affiliating with Physicians (other than Saltzer Adult Primary Care Physicians) who seek relationships with St. Luke's, so long as St. Luke's did not solicit or induce (or otherwise attempt to solicit or induce) such Physician in violation of this paragraph.


# IV.
## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

A.   "Government Plaintiffs" means Plaintiff Federal Trade Commission and Plaintiff State of Idaho.

B.   "Saltzer" means Defendant Saltzer Medical Group, P.A., and any entities it controls, its directors, officers, employees, agents, representatives, successors, and assigns; and the joint ventures, subsidiaries, partnerships, divisions, groups, and affiliates in each case controlled by Saltzer Medical Group, P.A., and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

C.   "St. Luke's" means Defendant St. Luke's Health System, Ltd., and any entities it controls, its directors, officers, employees, agents, representatives, successors, and assigns; and the joint ventures, subsidiaries, partnerships, divisions, groups, and affiliates

22

in each case controlled by St. Luke's Health System, Ltd., and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

D.    "Acquirer" means a Person who acquires the Saltzer Assets and Business or a Person who otherwise invests in or supports the Saltzer Assets and Business pursuant to this Order, or Saltzer if it acquires the Saltzer Assets and Business through a spin-off.

E.    "Acquisition Date" means December 31, 2012, the date on which St. Luke's acquired Saltzer.

F.    "Current Recruitment Agreement" means the six (6) recruitment agreements between Saltzer Physicians, Saltzer, and St. Luke's identified in the list attached as Exhibit B to this Order.

G.    "Defendants" means St. Luke's and Saltzer.

H.    "Designated Employees" means:

1.    Saltzer Medical Professionals;

2.    Personnel other than Saltzer Medical Professionals who were employed by Saltzer as of the Acquisition Date or hired after the Acquisition Date and who spend more than 25% of their time working for the Saltzer Assets and Business; and

3.    Any person employed by St. Luke's who took over for, or was hired as a replacement for, a position held by a Saltzer Medical Professional and who no longer works at St. Luke's, including a person who moved, retired, or died after the acquisition date.

I.    "Maintenance Services" means any services or assistance agreements provided by St. Luke's to Saltzer or SIHP, and any other services as requested by Saltzer or SIHP or any Acquirer and agreed to by the Trustee and Government Plaintiffs.

J.      "Monitor" means the person appointed pursuant to Paragraph II. of this Order as the Asset Maintenance Monitor.

K.      "Orthopedic Surgeons" refers to Kenneth Lindley, M.D., Jared Armstrong, M.D., and Jared Johnson, M.D. II.

L.      "Payor" means any Person that purchases for, or otherwise pays for medical goods or services for themselves or for any other person, including, but not limited to: health insurance companies; preferred provider organizations; point of service organizations; prepaid hospital, medical, or other health service plans; health maintenance organizations; government health benefits programs; employers or other persons providing or administering self-insured health benefits programs; and patients who purchase medical goods or services for themselves.

M.      "Person" means any natural person, partnership, corporation, association, trust, joint venture, government, government agency, or other business or legal entity.

N.      "Physician" means a doctor of allopathic medicine ("M.D.") or a doctor of osteopathic medicine ("D.O.").

O.      "Saltzer Adult Primary Care Physician" means a Saltzer Physician as described by the Court's finding #49 in its Finding of Fact who: (1) spends, or has spent during any three-month period since the Acquisition, more than 25% of their time providing any one of or a combination of internal medicine, family practice, or general practices for Saltzer in Nampa, Idaho; and (2) provides, or has provided during any three-month period since the Acquisition, these services to commercially insured patients aged 18 and over.

P.      "Saltzer Assets and Business" means all physical, tangible, and intangible assets owned, leased, or operated by Saltzer, at the time of the Acquisition or at any time since, whether

or not currently owned leased, or operated by Saltzer, St. Luke's, or SIHP including, but not limited to:

1.     patient names and files;

2.     agreements, arrangements, and contracts with Physicians or other entities (including insurance companies);

3.     leases for the Saltzer Facilities;

4.     all rights, title and interest of St. Luke's in any tangible property (except for consumable or disposable inventory) that has been on the premises of the Saltzer Facilities used by Saltzer Medical Professionals at any time since January 1, 2013, including, but not limited to, all equipment, furnishings, fixtures, improvements, and appurtenances;

5.     real estate;

6.     all permits and licenses, to the extent transferable;

7.     documents relating to policies and procedures, quality control, payors, and suppliers, including contracts to the extent they can be disclosed;

8.     Signage, good-will, websites, and advertisements affiliated with Saltzer;

9.     MRI and CT imaging equipment, facilities, and services; and

10.    Medicare and Medicaid provider numbers to the extent transferable.

Q.    "Saltzer Facilities" means any locations where Saltzer or SIHP provides or has provided medical services, including without limitation:

1.     In Nampa, Idaho:

a.     Saltzer Main Clinic, Saltzer Idaho Pain Management, and Nampa Quick Care, located at 215 E. Hawaii Avenue, Nampa ID, 83686;

       b.      QuickCare Ventana and Ventana, located at 9850 W. St. Luke's Drive, Nampa ID, 83687;

       c.      Idaho Sleep Health (Nampa), 210 W. Georgia Ave., Suite 120, Nampa ID, 83686;

       d.      Saltzer Imaging, 4403 East Flamingo Ave., Nampa ID, 83687.

2.      In Boise, Idaho:

       a.      Idaho Sleep Health, 7272 Potomac Dr., Boise ID, 83704;

       b.      Saltzer - Idaho Pain Management (Boise), 8950 W. Emerald St., Ste. 168, Boise ID, 83704

3.      In Meridian, Idaho:  Portico and Hearing and Balance, located at 3277 E. Louise Dr., Suite 200, Meridian ID, 83642

4.      In Caldwell, ID:  Caldwell, 1818 S. 10th Avenue, Caldwell ID, 83605.

R.      "Saltzer Medical Professional" means a physician assistant, nurse practitioner, nurse, occupational or health technician or therapist, lab technician, or other non-physician provider who was employed by Saltzer on the Acquisition Date, or has become affiliated with Saltzer and employed by St. Luke's, or was recruited by Saltzer, but hired by St. Luke's, since the Acquisition Date.

S.      "Saltzer Physician" means a Physician who was affiliated with Saltzer at the time of the Acquisition Date, or who has become affiliated with Saltzer since the Acquisition Date, or who was recruited by Saltzer, but became affiliated with St. Luke's.

T.      "Saltzer Physician Individual Contracts" means the following current contracts, identified in the list attached as Exhibit C to this Order, between individual Saltzer Physicians and St. Luke's:

1.      Medical Director agreements for:

      a.      supervision of a nutritional program;

      b.      supervision of an anticoagulation clinic;

      c.      supervision of Saltzer's Quick Care Clinics;

2.      One (1) Physician contract to provide supervision of Advanced Practice Clinicians in Saltzer's Quick Care Clinics;

3.      Four (4) Physician contracts to provide medical research services;

4.      One (1) Physician contract to provide services as a medical review officer to review workplace drug testing results.

U.      "SIHP" means Southern Idaho Health Partners, LLC, a wholly-owned subsidiary of St. Luke's, which holds some of the Saltzer Assets and Business.  Southern Idaho Health Partners, LLC, may include assets from the Saltzer Assets and Business and from St. Luke's that are added after the date of this Order.

V.      "Trustee" means the person appointed pursuant to Paragraph II. of this Order as the Divestiture Trustee.

## V.
## JURISDICTION

This Court shall retain jurisdiction of this matter for all purposes and for five (5) years or the full duration of this Order, whichever comes later.  SO ORDERED.

DATED: December 10, 2015

B. Lynn Winmill
Chief Judge
United States District Court

# **EXHIBIT A**

# **PARAGRAPH III.A. COMMUNICATION**

**PARAGRAPH III.A. COMMUNICATION:**

Date

Dear _____,

I am writing to you, a valued employee, to share some information about how you will be affected by a recent court order in the St. Luke's antitrust litigation.  This settlement order was approved by the Federal District Court on _____and is intended to implement the Court's 2014 judgment that requires St. Luke's to divest Saltzer.  It also requires St. Luke's to keep Saltzer as a viable operation until it is divested or spun-off as an independent competitor.

Pursuant to the settlement order, we are notifying you as follows:

1.  St. Luke's and Saltzer will not take any action to restrict your discussions with and employment or affiliation with a company that may buy Saltzer.

2.  During the divestiture process, you may meet personally with potential acquirers outside the presence or hearing of any employee, agent, or management of St. Luke's or Saltzer. You may also share your views with the Divestiture Trustee, Mr. James Moloney, or his associates, from Cain Brothers.  Mr. Moloney has been engaged to find a buyer for Saltzer, and to negotiate the terms of that transaction.  In addition, Mr. Richard Shermer, of R. Shermer & Company, has been appointed the Monitor under the Order, to assure St. Luke's and Saltzer comply with the Court's Order to maintain the Saltzer assets.

3.  We encourage you to remain with Saltzer if Saltzer is purchased by a third party.

4.  Everything will stay as it is between St. Luke's and Saltzer until divestiture is complete. You are still required to perform your current duties and responsibilities to maintain your employment.  Neither St. Luke's nor Saltzer will make any changes in employment, unless those changes are approved by the Monitor and the Federal Trade Commission and Idaho Attorney General.

5.  Saltzer is putting its plans to be a primary care focused practice on hold.  Any changes will wait until Saltzer is divested.

Although the divestiture process may be somewhat unsettling, we assure you that St. Luke's and Saltzer are committed to supporting all of your needs so that you can continue to provide our patients the excellent care they have come to expect.

If you desire a copy of the settlement order, have questions about the settlement order, or questions about any other issue relating to the divestiture process, please feel free to call or email me. You may also contact the Trustee, Mr. James Moloney, of Cain Brothers, at (415) 962-2961

or JMoloney@Cainbrothers.com, or the Monitor, Mr. Richard Shermer, of R. Shermer & Company, at (214) 668-0294 or dshermer@rshermer.com.

Sincerely,


_____
Saltzer Representative



_____
St. Luke's Representative

# **EXHIBIT B**

# **CURRENT RECRUITMENT AGREEMENTS**

CURRENT RECRUITMENT AGREEMENTS:

1.      Recruitment Agreement by and between St. Luke's, Saltzer, and Megan Kasper, M.D., F.C.O.G. (October 1, 2015).

2.      Recruitment Agreement by and between St. Luke's, Saltzer, and Joshua Lundberg, M.D. (October 1, 2015).

3.      Recruitment Agreement by and between St. Luke's, Saltzer, and Laura Danis, D.O. (October 1, 2015).

4.      Recruitment Agreement by and between St. Luke's, Saltzer, and Brian D. Affleck M.D. (August 30, 2013); First Amendment, (December 31, 2013); Second Amendment, (January 1, 2015).

5.      Recruitment Agreement by and between St. Luke's, Saltzer, and Andrea Dimichele-Manes, M.D. (May 1, 2014).

6.      Recruitment Agreement by and between St. Luke's, Saltzer, and Mari Ann Riley, M.D. (December 1, 2015).

# EXHIBIT C

# SALTZER PHYSICIAN INDIVIDUAL CONTRACTS

SALTZER PHYSICIAN INDIVIDUAL CONTRACTS:

1.      Medical Director Agreement by and between St. Luke's and Elaine Davidson, M.D. (September 1, 2013)(Medical Director for Ideal Protein Nutritional Program at Saltzer); First Amendment (September 1, 2014); Second Amendment (October 1, 2015).

2.      Medical Director Agreement by and between St. Luke's and Stanley Stringam, M.D. (May 1, 2013)(Medical Director for the Anti-Coagulation Clinic).

3.      Medical Director Agreement by and between St. Luke's and Harold Kunz, M.D. (April 18, 2015)(Medical Director for Quick Care at St. Luke's).

4.      Administrative Services Agreement by and between St. Luke's and Jeff Hansen, M.D. (May 1, 2013)(Clinical Oversight and Supervision for the Physician Assistants and Nurse Practitioners in Saltzer's Quick Care Clinic).

5.      Professional Services Agreement for Clinical Research by and between St. Luke's and Richard Aquilar, M.D. (January 1, 2013).

6.      Professional Services Agreement for Clinical Research by and between St. Luke's and Kristyn Schelhaas, D.O. (October 1, 2013); First Amendment (October 1, 2015).

7.      Professional Services Agreement for Clinical Research by and between St. Luke's and Stanley O. Stringam, M.D. (January 1, 2013); First Amendment (December 31, 2013); Second Amendment (January 1, 2015).

8.      Professional Services Agreement for Clinical Research by and between St. Luke's and Elaine M. Davidson, M.D. (September 1, 2014); First Amendment (September 29, 2015).

9.      Limited Professional Services Agreement by and between St. Luke's and Howard Shoemaker (October 1, 2014)(A Back-up Medical Review Officer for Occupational Health Services and St. Luke's  Employee Health and Wellness Officer); First Amendment (July 1, 2015).