UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC.<br>　　　　　Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.<br>　　　　　Defendant. | Case No. 1:12-CV-00560-BLW (Lead Case)<br><br>**MEMORANDUM DECISION** |
| FEDERAL TRADE COMMISSION; STATE OF IDAHO<br>　　　　　Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.; SALTZER MEDICAL GROUP, P.A.<br>　　　　　Defendants. | Case No. 1:13-CV-00116-BLW |

## INTRODUCTION

The Court has before it motions for attorney fees filed by the private plaintiffs (St. Al's and Treasure Valley Hospital) and the State of Idaho. The motions are fully briefed and at issue. In the decision below, the Court explains the amount of fees it awards to each of the movants.

## LITIGATION BACKGROUND

Following a bench trial, the Court issued a decision unwinding the merger between St. Luke's and Saltzer. That decision was appealed and affirmed. *See Saint Alphonsus Medical Center v. St. Luke's,* 778 F.3d 775 (9th Cir. 2015).

**Memorandum Decision – page 1**

Pursuant to agreement of all counsel, the Court bifurcated the issue of attorney fees. *See Docket Entry Orders (Dkt. Nos. 485 & 486)*. That agreement stated that the Court would decide first whether the private plaintiffs were entitled to an award of attorney fees as a prevailing party, and then decide later the amount of the award.

In that first phase, the Court decided that the private plaintiffs were entitled to an award of fees. *See Memorandum Decision (Dkt. No. 607)*. In making that ruling, the Court rejected St. Luke's argument that the private plaintiffs did not prevail because the Court never addressed their argument that the merger would exclude competition in the markets for pediatric services in Nampa, inpatient hospital services in Ada and Canyon counties, and two outpatient hospital services markets in Ada and Canyon counties. St. Luke's argued that because the Court's ruling focused on the adult primary care market – essentially adopting the arguments of the FTC and State – the private plaintiffs were not prevailing parties.

The Court disagreed, citing Ninth Circuit authority that even when a court "fail[s] to reach certain grounds" argued by a plaintiff, "the unaddressed claim may support a fee award" when the plaintiff succeeds on any significant issue in the litigation and achieves some of the benefit it sought in bringing the suit. *See Gerling Global Reinsurance Corp. of America v. Garamendi*, 400 F.3d 803, 809-10 (9th Cir. 2005). The Court went on to explain that the private plaintiffs achieved full success and played a major role in the outcome of the case:

> Here, the private plaintiffs achieved all the benefit they sought in bringing the suit, and succeeded on a significant issue. Importantly, both sets of plaintiffs presented evidence demonstrating that the merger would result in

**Memorandum Decision – page 2**

> higher prices. The Government plaintiffs used this evidence as direct proof of their antitrust claims. The private plaintiffs used this evidence to argue that if St. Luke's had the market power before the merger to raise prices when it purchased physician practices, it would have the market power after the merger to exclude competitors.
>
> So both sets of plaintiffs pursued this evidence as part and parcel of their case. While the private plaintiffs pursued it as only part of their case, and the Court did not address in full their claims, *Gerling* makes it clear that this is not fatal to their fee petition. Counsel for the private plaintiffs did not duplicate the work of Government counsel, and played a major role in discovery, pre-trial proceedings, and the trial itself in providing evidence that the Court used in finding that the merger would result in higher prices. The private plaintiffs succeeded on this major issue, and are thus entitled to fees under *Gerling* even though the Court did not address their claim that higher prices demonstrated an ability to exclude competitors.

*See Memorandum Decision, supra* at pp. 4-5. Following that decision, the private plaintiffs and the State briefed the issue as to the amount of the fees to be awarded. The Court will resolve that issue below.

## LEGAL STANDARD

When calculating the amount of attorney fees to be awarded in a litigation, this Court must apply the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may consider a variety of factors when computing the lodestar rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Carter v. Caleb Brett LLC,* 757 F.3d 866, 869 (9th Cir.2014)

**Memorandum Decision – page 3**

ANALYSIS

**<u>Hourly Rates</u>**

There is no dispute that the hourly rates charged by the attorneys are reasonable. The Court's own analysis confirms that conclusion.

**<u>Number of Hours – Private Plaintiffs</u>**

The private plaintiffs claim that they spent about 22,000 hours on this case, and they seek recovery for all those hours in their fee request. St. Luke's objects, arguing that 80% of that time was spent on claims that were never ruled upon by the Court. The private plaintiffs counter that all of their time was intertwined with the successful claims and cannot be separated out as urged by St. Luke's.

A prevailing party cannot recover a fee award for hours spent on a claim that is not related to a successful claim. *Hensley v. Eckerhard,* 461 U.S. 424, 435 (1983). This Court is "required to analyze whether [the movant] achieved only limited success in the underlying litigation and how her requested fee award should be reduced to account for her limited degree of success." *Ryan,* 786 F.3d at 764. A court must ask "whether the unsuccessful claim arises from the same core of facts as the successful claim and whether it is likely that some of the work performed in connection with the unsuccessful claim also aided the work done on the merits of the successful claim." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir.1995).

In this case, the Court's final decision rested on the effects of the merger on the adult primary care market. The Court did not reach the issues raised by the private plaintiffs concerning the alleged anticompetitive effects in markets other than the adult

**Memorandum Decision – page 4**

primary care market.  These issues that the Court did not resolve are referred to by the parties as the "vertical" issues.

St. Luke's argues that counsel for the private parties spent 80% of their time on the vertical issues, and that their fee request should therefore be reduced by that percentage.  They base their argument in part on an examination of the billing records of counsel for St. Al's from the Honigman and Duke-Scanlan lawfirms.  That review, St. Luke's claims, revealed that 27% of the hours were devoted to the vertical issues, and many other hours were so vaguely labeled that they cannot be attributed to any prevailing issue.  *See Exhibit 4 (Dkt. No. 636-4); Stein Declaration (Dkt. No. 636)* at ¶ 9.  When a full analysis is done, St. Luke's argues, at least 80% of counsels' billable hours were spent on issues that were unrelated to the successful claims.  *Id.*

Counsel for the private plaintiffs responds that St. Luke's mislabeled many of the hours and that "no more than 10% of the efforts of [their counsel] related to tasks that were 'primarily or exclusively' unrelated to the claims decided by the Court."  *See St. Al's Reply Brief (Dkt. No. 646)* at p. 5; *Ettinger Reply Declaration (Dkt. No. 646-1)* at ¶ 2.  And even the hours included in that 10% relate mainly to the referrals issue that the Court addressed in its final decision, argues counsel for the private plaintiffs.  *Id.*  The private plaintiffs identify only 6 of the 71 depositions in which they participated that involved "evidence exclusively or primarily devoted to the vertical case."  *See St. Al's Reply Brief, supra* at p. 3.

This Court "should defer to the winning lawyer's professional judgment as to how much time he or she was required to spend on the case." *Ryan,* 786 F.3d at 764.  The

**Memorandum Decision – page 5**

Court agrees with counsel for the private plaintiffs that the vast majority of their time was devoted to the adult primary care issue rather than to the vertical issues.  The evidence and documents submitted by counsel for the private plaintiffs were frequently crucial to the Court's overall understanding of the case, and provided a foundation for the Court's final decision.  Often, the adult primary care issues overlapped with the vertical issues.  For example:  (1) the private plaintiffs alleged that the geographic market for adult primary care was identical with the market for pediatric primary care; (2) testimony regarding barriers to entry applied to adult primary care and other markets; and (3) evidence concerning St. Luke's quality defense and efficiencies related directly to the adult primary care issue but also to the vertical issues.  The time spent on overlapping issues is compensable under the authorities cited above because it is impossible to untangle the related issue from the unrelated issue.

But some hours are not so tangled and can be parsed out as having been devoted solely to vertical issues unrelated to the final decision.  The Ninth Circuit has held that the "district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of [excluding non-compensable hours] from a fee application." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1203 (9th Cir. 2013). After listening to four weeks of trial, and reviewing thousands of pages of documents, the Court finds that 10% of the hours were devoted to pursuing vertical issues unrelated to the successful claims.  This represents the time spent by the private plaintiffs pursuing the anticompetitive effects in the markets for pediatric services in Nampa, inpatient hospital services in Ada and Canyon counties, and two outpatient hospital

**Memorandum Decision – page 6**

services markets in Ada and Canyon counties. While some of the time spent on these vertical issues overlapped with successful issues and is compensable, as discussed above, the Court finds that 10% of that time did not overlap and is not compensable. The Court shall therefore reduce the fees sought by counsel for the private plaintiffs by 10%.

**Time Spent on Appeal**

St. Luke's argues that the private plaintiffs did not cross-appeal from the Court's decision and added nothing of value to the Government's appeal. The Court disagrees. The private plaintiffs achieved a successful result and so their participation in the appeal was a reasonable effort to protect that result. There was no duplication of effort: In the briefing on appeal, the Government focused on legal standards while the private plaintiffs focused on the specific evidence supporting the Court's ruling. *See Ettinger Declaration (Dkt. No. 617-3)* at ¶ 49. For these reasons, the Court will not reduce the hours spent on the appellate issues.

**Comparison with Defense Hours**

St. Luke's claims that counsel for the private plaintiffs and the State spent far more hours on this case than did counsel for the defendants. St. Luke's points out that the private plaintiffs and the State spent 25,643 hours, and that although we do not know the hours spent by the FTC, it is reasonable, St. Luke's argues, to assume they spent about 19,000 hours, adding up to a total of over 44,000 hours devoted to this case by the plaintiffs. *See Stein Declaration (Dkt. No. 636)* at ¶¶ 3, 5, 7. Yet defendants only

incurred 19,000 hours, and thus the plaintiffs spent 229% of the total time spent by defendants. *Id.* at ¶ 7.[1]

Yet there is a question about this comparison raised by statements of St. Luke's in a related case. In *St. Luke's v. Allied World,* Case No. 1:14-cv-475-BLW, St. Luke's sued its insurer (Allied World) arguing that it was responsible for St. Luke's attorney fees in this case. In pursuing that claim against Allied World, St. Luke's stated that its attorney fees in this case totaled over $17 million, a sum far above that sought by the plaintiffs here.

This makes the Court skeptical that St. Luke's only spent 19,000 hours on this case. Of course it is possible that St. Luke's hourly rates are dramatically higher than the rates of plaintiffs' counsel, which might explain how St. Luke's nearly doubled its total dollar billing despite working only 19,000 hours. But that is highly unlikely – both sides hired highly-compensated specialty attorneys whose rates are set in a national market. And it is telling that St. Luke's does not rebut this argument in its final sur-reply brief. *See St. Luke's Sur-Reply Brief (Dkt. No. 650-2).*[2] Finally, St. Luke's has not submitted any billing sheets to support its claim that it spent about 19,000 hours on this case.

Although opposing counsel's billing records may be relevant to determining whether the prevailing party spent a reasonable number of hours on the case, those

---

[1] Neither side included the hours related to the FTC's pre-litigation investigation. *See Ettinger Declaration, supra* at ¶ 15; *Reply Declaration of Stein (Dkt No. 650)* at ¶ ¶ 2-6.

[2] The Court will grant St. Luke's motion to file the sur-reply brief (Dkt. No. 650).

**Memorandum Decision – page 8**

records are not dispositive.  *See Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1287 (9th Cir.2004) (noting that opposing counsel's billing records are "useful" in determining the amount of a reasonable fee).  Therefore, the district court has the discretion not to rely on them.  *Gonzalez,* 729 F.3d at 1202.

Here, the record simply is not clear whether there is actually the dramatic discrepancy in hours alleged by St. Luke's.  Thus, the Court will not reduce the hours based on those allegations.

**Travel Time**

The private plaintiffs and the State have requested $247,237.50 in attorney fees for time spent traveling.  St. Luke's argues that plaintiffs should not be compensated for their attorney fees incurred while traveling.

The Ninth Circuit has established that travel time is "reasonably compensated at normal hourly rates if such is the custom in the relevant legal market."  *See Davis v. City & County of San Francisco,* 976 F.2d 1536, 1543 (9th Cir.1992) *vacated on other grounds by*, 984 F.2d 345 (9th Cir.1993).  This District has in the past awarded fees for travel time without discussion of whether it is within the custom of the relevant legal market.  *See Mays v. Stobie,* 2012 WL 914928 at *9 (D.Id. February 14, 2012) (awarding fees for travel time).  More recently, the Idaho Court of Appeals held that attorney fees would not be awarded for travel time unless as a sanction.  *Portfolio Recovery Assoc., LLC v. Ruiz,* 2015 WL 6441722 at *4 (Oct. 23, 2015).

The *Portfolio* case would be persuasive here if the relevant legal market was local in nature.  But this case presented complicated issues in the health care antitrust field, and

**Memorandum Decision – page 9**

it was reasonable to hire counsel that specialized in this area. No qualified attorneys practiced locally, and so out-of-state counsel were retained. Given this, the extensive travel costs here were necessarily expended due to the need for specialized counsel. *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (refusing to disallow travel time where it would "deter out-of-town attorneys from undertaking this type of representation in the future").

St. Luke's challenges the amount of the travel expenses, arguing that it appears counsel often traveled by first class. But counsel responds that "I did not book first class fares for my travel except on (at most) one or two occasions when the only available seat for a flight that was necessarily booked late was in first class." *See Ettinger Reply Declaration, supra* at ¶ 27. There is no contrary evidence and so the Court credits counsel's representation about the lack of first class travel.

The Court's review of the fees incurred during travel leads it to conclude that those fees are reasonable. They are high in large part because this case was on a fast track discovery schedule that required extensive travel on tight deadlines. Depositions were taken in many different locations. Lead counsel, and his co-counsel, flew often from Michigan to Idaho to take depositions, talk with witnesses, and attend Court hearings. *Id.* at ¶ 29. Given these circumstances, the Court finds that the $247,237.50 award sought for the fees incurred during traveling is reasonable.

**Interest**

The private plaintiffs and State are entitled to interest on the fee award from April 29, 2015 (the date on which the Court found them to be prevailing parties and entitled to

**Memorandum Decision – page 10**

fees) until paid. *Spain v. Mountanos,* 690 F.2d 742, 748 (9th Cir. 1982) (holding that 28 U.S.C. § 1961 allows attorney fees); *Friend v. Kolodzieczak,* 72 F.3d 1386, 1391-92 (9th Cir. 1995) (holding that interest runs from the date the entitlement to fees is secured). The appropriate rate is the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the Judgment." *Id.* The Court will leave it to counsel to calculate the precise amount of interest.

### Costs

Pursuant to 28 U.S.C. § 1920, the private plaintiffs and the State seek recover of their allowable costs. The Court finds them proper and will award (1) St. Al's the sum of $85,333.98; (2) TV Hospital the sum of $3,100.22; and (3) the State the sum of $68,294.06.

These parties also seek non-taxable costs. In its discretion, the Court finds such an award inappropriate and will deny that request.

### Other Items

St. Luke's has brought other challenges to the fee petition but the Court finds that they are without merit.

### Conclusion

The Court has considered all the *Carter* factors listed above. *Carter,* 757 F.3d at 869. This was a novel and complicated case. It required counsel with specialized knowledge in the health care antitrust field or in courtroom litigation. The deadlines were tight because the Court put the case on a fast track, largely precluding counsel from

**Memorandum Decision – page 11**

taking other employment. The private plaintiffs and the State achieved their goal of unwinding the merger and so were found to be prevailing parties. Although some issues raised by the private plaintiffs were not addressed by the Court, the vast majority of their work concentrated on, and was related to, the adult primary care issue that was the core of the Court's final decision in their favor. The Court will reduce the award to the private plaintiffs by 10% to account for the work they did on issues unrelated to those upon which they prevailed.

The final awards, taking into account the 10% reduction for the private plaintiffs, are as follows:

| Party | Attorney Fee Award | Cost Award | Total Award |
| --- | --- | --- | --- |
| St Al's | $7,061,550.07 | $85,333.98 | $7,146,884.05 |
| TV Hospital | $332,282.70 | $3,100.22 | $335,382.92 |
| State of Idaho | $875,694.15 | $68,294.06 | $943,988.21 |

The Court will enter a separate Judgment setting forth its ruling on these attorney fees motions and the specific sums awarded.

DATED: March 28, 2016

B. Lynn Winmill
Chief Judge
United States District Court